**Mark Allen TAYLOR, Plaintiff,**

v.

**SOLVAY PHARMACEUTICALS, INC., Defendant.**

**Brian E. Rohrbough, et al., Plaintiffs,**

v.

**Wayne F. Harris, et al., Defendants.**

Nos. CIV.01–B–2076 (PAC), CIV.00–B–808 (PAC).

United States District Court, D. Colorado.

Sept. 22, 2004.

---

Janet Dian Zimmerman, Sterling, CO, Candace Mudgett McCune, Richard G. Peterson, Peterson, Dymond & Reagor, LLP, Greenwood Village, CO, John W. Decamp, Decamp Legal Services, P.C., Lincoln, NE, Ronald V. Miller, Miller & Zois, LLC, Glen Burnie, MD, for Plaintiffs.

Mark F. Kennedy, James Ernest Hooper, Amy Lenore Padden, Craig Ruvel May, Ericka Frances Houck, Wheeler, Trigg & Kennedy, PC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

These cases, consolidated for the purpose of determining the disposition of certain sensitive discovery materials, arose out of the tragedy that occurred at Columbine High School on April 20, 1999. Brian E. Rohrbough and others brought Civil Case No. 00–B–808 (the "Rohrbough Case") against Wayne and Kathy Harris ("Harrisses") and Tom and Sue Klebold ("Klebolds"), parents of the gunmen, and other defendants. Plaintiff Mark Allen Taylor filed Civil Case No. 01–B–2076 (the "Solvay Case") against Defendant Solvay Pharmaceuticals, Inc. ("Solvay"), which manufactured a prescription drug that gunman Eric Harris was allegedly taking at the time of the tragedy. The drug allegedly either caused or contributed to Eric Harris' conduct on that day. Both the Rohrbough Case and the Solvay Case have settled.

This matter is currently before me on Solvay's Motion to Modify a Protective Order entered by the Magistrate Judge, under which discovery materials used in the Solvay

and Rohrbough Cases, including video and audio tapes and deposition transcripts, have been sealed and are stored in an evidence room under the protection of a special master. Two expert witnesses retained by Solvay, Dr. Park Dietz ("Dr.Dietz") and Dr. John March ("Dr. March"), were permitted to examine the materials. Drs. Dietz and March produced reports of their examinations, which contain their findings and their conclusions that Solvay was not responsible for the Columbine tragedy. The experts' reports also were sealed, pursuant to orders that the Magistrate entered in each case, because the reports included references to and quotations from the protected materials. Solvay now seeks modification of the Magistrate Judge's orders so that Drs. Dietz and March may publish their findings and objects to an order of the Magistrate Judge that certain materials be destroyed. The Harrisses and Klebolds oppose the Motion. The Motion is adequately briefed and oral arguments would not materially aid its resolution. For the reasons set forth below, I DENY the Motion.

## I. Background

The Magistrate Judge oversaw the confidential production in the Solvay Case of materials that Solvay had requested in subpoenas issued to the Harrisses, the Klebolds, Columbine High School, the Jefferson County Sheriff's Office, the Jefferson County Coroner's office, and two doctors. On March 22, 2002, after issuing several protective orders from the bench and in writing, the Magistrate Judge issued a detailed Consolidated Protective Order ("Solvay Order"), which superseded all prior orders. Her expressed concerns were twofold. First, she determined, in agreement with a state court judge who had ruled similarly in a related case, "that dissemination of the materials to the public would harm the victims and their families and the families of the perpetrators." February 19, 2002 Motions Hearing before Magistrate Judge, 75. Second, she feared a "copycat effect," in which potential perpetrators of other atrocities would take encouragement from exposure to certain of the materials, which included statements and images of the Columbine gunmen recorded prior to their rampage. *Id.*

The Magistrate Judge ordered numerous safeguards to protect the materials. She authorized a special master to oversee the production and protection of the materials and ordered that the materials be stored in a locked room at the courthouse, to which only the special master and the clerk of the Court would have keys. Any party wishing to view the materials could do so only in the presence of the special master. The Magistrate Judge identified the specific materials she expected to be produced. Among those materials she identified several that were not to be copied without permission of the Court and then only under strict guidelines. Other materials could be copied by counsel, but only for use in the litigation of the Solvay Case. The Magistrate Judge ruled, "All confidential material shall be kept in the strictest confidence, used only for purposes of the instant litigation, and returned to the person or entity who produced them at the conclusion of this matter, including all appeals." Solvay Order, 8.

At issue here is that portion of the Solvay Order that reads,

> Neither the documents and materials deposited with the Court pursuant to the procedures set forth in [the Solvay Order] nor their contents shall be disclosed, revealed or communicated to any person other than the following: attorneys for the parties; experts or consultants retained by the parties with respect to this action.

Solvay Order, 8. To reinforce this requirement, the Magistrate Judge ordered,

> Counsel and experts who are permitted access to the secured evidence room pursuant to this order may make notes by conventional means (e.g., using pen and paper or laptop computers). Such notes made by attorneys will be treated as confidential work product. The parties, their attorneys, and their experts shall treat all such notes with the same confidentiality as the source material from which their notes are derived.

Solvay Order, 11. The Solvay Order was later amended to permit counsel to store some materials in secure locations within

their law firms in anticipation of trial. November 1, 2002 Order Modifying Consolidated Protective Order March 22, 2002. The confidentiality requirements of the Solvay Order were not modified.

After conducting extensive discovery pursuant to and in reliance upon the Solvay Order, the parties settled and the Solvay Case was dismissed before any public summary judgment or trial record was made.

Many of the materials deposited in the secure evidence room for the Solvay Case were also of material interest to the parties in the Rohrbough Case. For the sake of efficiency, the Magistrate Judge made the evidence room available to the Rohrbough Case parties. On April 25, 2003, she issued a Consolidated Protective Order ("Rohrbough Order") in the Rohrbough Case, which incorporated the procedural safeguards of the Solvay Order and imposed substantially the same restrictions. Among other things, the Rohrbough Order required the continued confidentiality of work product generated during the Solvay and Rohrbough Cases, which was to be left in the evidence room. Rohrbough Order, 2–3, 9–10.

The Rohrbough Case settled on August 12, 2003 and was dismissed. In the Magistrate Judge's Evidence Room Order of September 23, 2003 ("Evidence Order"), she ordered that records of the depositions taken and exhibits offered were to be destroyed. She reiterated "that it is incumbent upon counsel and their clients to maintain and hold attorney/client work product derived from confidential materials deposited in the Evidence Room with the same confidentiality as the source material from which the work product was derived." Evidence Order, 12.

## II. Discussion

### A. Cause for the Orders

■ Public access to discovery materials may be limited upon a showing of good cause. Fed.R.Civ.P. 26(c); *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). No reasonable doubt can be cast upon the Magistrate Judge's good cause for issuance of the Solvay and Rohrbough Orders. Concern for the privacy and safety of the families of both victims and perpetrators and the safety of the general public were legitimate grounds for the Orders.

■ Solvay argues that no cause can exist because the Magistrate Judge took no evidence. I first note that Solvay has neither described nor submitted the materials that were before the Magistrate Judge when she made her ruling. I am thus unable to confirm the predicate for this argument. In any event, the Magistrate Judge was entitled to rely upon the representations of counsel concerning the contents of the materials and the dangers such materials might present if made public. The Tenth Circuit has so ruled in an unpublished decision, *Hutchinson v. Pfeil,* 201 F.3d 448 (Table), 1999 WL 1015557 (10th Cir.1999), *cert. denied* 530 U.S. 1205, 120 S.Ct. 2200, 147 L.Ed.2d 235 (2000). Good cause for entry of a Rule 26(c) order need not be established at an evidentiary hearing. However, if Solvay had compelling evidence that disclosure would not jeopardize public safety, it could have supplied that evidence at the time that arguments were made. The Magistrate Judge did not abuse her considerable discretion. *Otero v. Buslee,* 695 F.2d 1244, 1247 (10th Cir.1982).

Solvay cites my decision in *Sanders v. Acclaim Entm't, Inc.,* 188 F.Supp.2d 1264 (D.Colo.2002) for the proposition that no basis existed for the Magistrate Judge to anticipate the possibility of copycat crimes from disclosure of the materials. In *Sanders,* I dismissed a Complaint alleging that the defendants knew that their movies and video game products created an unreasonable risk of the harm that occurred in the Columbine tragedy. After noting that Colorado law imposes no duty to foresee intentional violent acts by others, I stated that the speculative possibility that the defendants' motion picture and video games might incite a disturbed person to violence was not sufficient to create a legal duty. *Sanders,* 188 F.Supp.2d at 1272. That same possibility, however, is sufficient to constitute good cause for issuance of a protective order in a dispute between private litigants. The duty that the Magistrate Judge imposed upon the litigants in this case was not one giving rise to civil liability for its breach but rather an

unexacting obligation to keep the discovery materials confidential.

The Harrisses have submitted the Declaration ("Shaffer Affidavit") of David Shaffer, F.R.C.P., F.R.C. Psych. ("Shaffer"), a professor of child psychiatry, who has not viewed the protected materials but nevertheless opined that "the portrayal of a number of different violent and conspicuous behaviors, including both suicide and unusual modes or circumstances of homicide, has the potential to be imitated by young people." Shaffer Affidavit, 2. Dr. Shaffer thus concluded "that release of the 'basement tapes' for purposes other than legitimate peer-reviewed research on material that could not be reproduced would be detrimental to the public interest." *Id.* He further explained,

> Witnessing the depiction of graphic suicide content in newspaper, television, books, or cinema increases the rate of both attempted and competed suicide in troubled youngsters. The likelihood of this enhancement is greater when the portrayal is accompanied by a high level of publicity and when the suicide victims are shown as attractive, powerful or charismatic, or when the circumstances give the event notoriety.

Shaffer Affidavit, 3. The Shaffer Affidavit casts additional light on the cause for the Orders.

Reference to the Solvay experts' own reports also demonstrates that the Magistrate Judge's concern was well-founded. The reports explicate the pattern by which gunmen such as Eric Harris and Dylan Klebold take encouragement from others who have engaged in public acts of violence and how Harris and Klebold themselves hoped to become infamous examples for potential followers. Both experts attribute the massacre in part to the gunmen's previous exposure to violent imagery and their study of notorious criminals and tyrants. Both experts pull sundry quotations from written and tape-recorded statements of the gunmen and conclude that Harris and Klebold hoped and anticipated that others would observe their statements and seek to imitate their actions.

Both of Solvay's experts also acknowledge the danger that publication of violent materi-

al poses to the public. Dr. March goes so far as to state, "The evidence is by now incontrovertible that violent behavior in the media is a potent risk factor for violent behavior in real life...." July 29, 2002 Final Expert Report of John S. March, M.D., MPH ("March Report"), 28. Solvay's experts' reports confirmed what the Magistrate Judge already understood—good cause existed for the Solvay and Rohrbough Orders.

The experts now claim in affidavits, which they have submitted in support of Solvay's Motion, that the contents of their reports would not endanger the public. Those assertions are insufficient to negate the cause that the experts themselves confirmed in their reports.

Solvay next turns its attention to seeking modification of the Orders.

### B. Modification of the Orders

The standard to be used in deciding whether to modify the Magistrate Judge's Orders is not obvious. Solvay cites *Wyeth Laboratories, Div. of American Home Products Corp. v. United States Dist. Court,* 851 F.2d 321 (10th Cir.1988) for the proposition that the burden is on the person opposing disclosure to demonstrate good cause for the continued protection. That decision, however, merely states the established rule that alteration of a protective order is within the Court's discretion and does not otherwise support Solvay's reading. *Wyeth Laboratories,* 851 F.2d at 323.

Similarly, *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424 (10th Cir.1990), *cert. denied sub nom. American Special Risk Ins. Co. v. Rohm & Haas Co.,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), which Solvay also cites, provides little guidance. There, the court adopted the Seventh Circuit's standard for use in cases in which "an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery," and ruled that parties opposing modification of such a protective order must show that prejudice would result from the modification. *United Nuclear Corp.,* 905 F.2d at 1428. This case differs

from *United Nuclear Corp.* Solvay has not suggested that the materials at issue here would assist it in another lawsuit or that continued protection of the materials would force it to engage in repetitive discovery in any other case.

Furthermore, the cause underlying the Solvay and Rohrbough Orders was not the protection of parties from prejudice to their claims and defenses. Rather, the goal of the Orders was to protect parties and non-parties—the families of the perpetrators and gunmen and the public—from the harm that disclosure to public might cause. The diffuse and varied nature of the non-parties' interests makes evaluation of those interests challenging. Many of the families interested in the materials are not parties to this case and no one appears to advocate on their behalf or on behalf of the public at-large. Therefore, I do not believe that the persons opposing modification of the order, whether parties here or otherwise, are required to demonstrate prejudice in order to avoid modification. The standard used in *United Nuclear Corp., supra,* and cases such as *Cunningham v. Subaru of Am.,* 155 F.R.D. 205, 207–208 (D.Kan.1994) is inapplicable here.

On the other end of the spectrum is the stringent standard employed by the Second Circuit and enunciated in *SEC v. TheStreet.com,* 273 F.3d 222 (2d Cir.2001).

> Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.'

*TheStreet.com,* 273 F.3d at 229, *citing Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979). Though that standard might have application here, where the non-party families relied upon the protective order by producing materials and testifying in depositions, this case does not require such a sweeping rule.

■ Because good cause for the Solvay and Rohrbough Orders existed when the Magistrate Judge issued them, only a change in circumstances by which the good cause is either removed or outweighed by other interests would justify modification. I thus find persuasive the standard stated in *Public Citizen v. Liggett Group. Inc.,* 858 F.2d 775 (1st Cir.1988), *cert. denied* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989), in which the court upheld modification of a protective order because the party seeking modification had met its burden of showing that "the reasons underlying the initial promulgation of the order in respect to the particular document sought no longer exist[ed]; and the district court made a reasoned determination that public interest considerations favored allowing counsel to make those particular documents public." *Public Citizen,* 858 F.2d at 791–792. Solvay fails to make that showing in this case.

### (1) Continuing Cause

■ Solvay asked me to re-evaluate the Magistrate Judge's findings on the basis of one change in circumstance—settlement and entry of final judgment. Solvay does not explain how settlement of the case might affect the reasons underlying the initial promulgation of the order. In fact it does not. As mentioned above, the Solvay and Rohrbough Orders were not intended to protect parties but rather non-parties. The parties' settlement of their dispute does not in any way affect the safety and privacy concerns the Magistrate Judge articulated.

Solvay argues that the experts' reports were prepared in anticipation of trial and dispositive motions and likely would have become public had the Solvay case not settled. Solvay cites a number of cases standing for the proposition that once documents are made part of a dispositive motion or other public record they lose their confidential character. *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir. 1988); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir.1986); *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub nom. Citytrust v. Joy,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). This argument ignores the rudimentary fact that the materials did not become public; no party ever used them publicly.

Indeed, it is speculative that the materials ever would have become public. First, the witnesses' reliance upon continued confidentiality might have been one of the factors enabling the parties' understanding of the case and their decision to settle. Second, the Harrisses and Klebolds were themselves parties and might have found motivation for settlement in their desire to preserve their own privacy. As the Second Circuit has noted, a "compelling reason to discourage modification of protective orders in civil cases is to encourage testimony in pre-trial discovery proceedings and to promote the settlement of disputes." *TheStreet.com,* 273 F.3d at 230 (citations omitted).

Third, failure to settle the case would not necessarily have resulted in publication of all or any of the materials. The Court could have put additional safeguards on the use of any materials in connection with a summary judgment motion, such as sealing all exhibits. It is also unknown what, if any, of the discovery materials might have been admissible at trial.

Solvay cites cases indicating that a District Court should properly vacate a protective order after the case is resolved. Those cases involve protective orders issued to promote one of two ends. First, as in *Jones v. Clinton,* 12 F.Supp.2d 931 (E.D.Ark.1998), courts often guard material in high-profile cases where release of the material to an eager press would jeopardize the court's ability to find an impartial jury. After judgment enters and trial becomes unnecessary, the protective order becomes superfluous. *Jones,* 12 F.Supp.2d at 934. Second, as in *Wyeth Laboratories, supra,* courts often issue orders to protect sensitive trade secrets and other proprietary materials. In both *Jones* and *Wyeth Laboratories* the courts vacated their protective orders after determining that release of the materials to the public would no longer jeopardize the objectives of the orders. Nothing indicates that the cause for the Magistrate Judge's expressed concerns has abated.

### (2) Public Interest Considerations

Solvay argues that the "need for disclosure outweighs the need for continued protection." Motion to Modify Protective Order ("Motion"), 9. It offers four justifications for disclosure. First, it analogizes the public's interest in the Columbine tragedy to the public's interest in the 1970 Kent State shootings, which was the subject of a protective order in *Krause v. Rhodes,* 671 F.2d 212 (6th Cir.1982), *cert. denied sub nom. Attorney Gen. of Ohio v. Krause,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982). In *Krause,* as here, the District Court had permitted discovery subject to a protective order sealing certain documents. After conclusion of the case, a second District Court judge considered the grounds underlying the protective order—grand jury secrecy, law enforcement concerns, and the privacy rights of individuals—and weighed them against First Amendment press interests and the historic nature of the event portrayed in the materials. The judge ordered that grand jury transcripts and personnel files of Ohio national guardsmen be returned to their sources and that other materials be disclosed subject to redaction of the names of witnesses. *Krause,* 671 F.2d at 216–217. The Circuit Court affirmed, ruling that the District Court judge had properly balanced the First Amendment against individual rights of privacy. *Krause,* 671 F.2d at 218.

Absent from the analysis in the *Krause* case was any concern that disclosure of the materials might engender copycat incidents. Neither District Court judge worried that other law enforcement agencies might be tempted to imitate the Ohio National Guard. Rather, the District Court might reasonably have anticipated that release of the materials to the public would have a chilling effect on law enforcement abuse. *Krause* was unlike this case in a significant respect. Even if any First Amendment interests present here counter the witnesses' privacy rights, they do not overcome the Magistrate Judge's concerns for public safety.

Second, Solvay argues that its experts' reports are secondary materials similar in nature to reports already available to the public. Solvay points to a report of the Jefferson, Colorado County Sheriff's office that quotes Harris and Klebold, describes the events of the massacre, depicts the weapons

used, and contains at least one photograph of the gunmen engaged in their pogrom. Solvay then attempts to paint a state court judge's order as requiring "unrestricted production" and full disclosure of the Sheriff's report. Review of the state court order, however, suggests that the judge ordered production and disclosure only to the parties in that case, not to the general public. Earlier, that same court had "imposed 'eyes only,' non-disclosure and no-copying restrictions in order to insure the confidentiality of the requested materials...." *Fleming et al v. Stone,* Jefferson County District Court Case No.2000CV884, *Order Following In Camera Review—No. 1* ("Sheriff Report Order"), 2. The court found a compelling interest in "making materials relating to the Columbine shootings available to the victims and their families." Sheriff Report Order, 3. The court did not indicate, however, that it intended to make the same materials available to the public and expressed deference to the view of the detective who authored the report that the public interest favored confidentiality. *Id.* In the same decision, the court intimated that it might in the future place restrictions on production and dissemination of some materials "in order to minimize the chance that public disclosure of information in this suit might assist other depraved individuals in undertaking an assault on innocent people." Sheriff Report Order, 4. The court also asked the parties to consider whether any restrictions might be justified" with respect to photographs and film of victims, though victims and victim families had a right of access to those items. *Id.* It thus appears that the state court did not intend widespread public dissemination but only disclosure to parties in that case.

I note that Solvay has also provided two other reports, one from the Colorado Governor's office and one prepared for a major media outlet, both quoting from the protected materials. I am not certain of the extent to which either report has been made public, though it appears that the Governor's report was posted on the State web site. I am concerned here only with the Magistrate Judge's Orders. Though some of the information might have slipped out of other agencies' custody, this Court is responsible only for what is brought before it.

Third, Solvay argues that confidentiality no longer should concern the Court because some, though not all, of the contents of the materials are already available to the public. This argument directly contradicts Solvay's fourth argument—that "the most important scientific evidence of the motives and reasons for Eric Harris' and Klebold's actions" has not yet been revealed to the public. Motion, 12. Either the information contained in the experts' reports is of no interest to the public, because it has already been reported, or the reports "remove much of the mystery and suspicion that shrouds the Columbine investigation," thus endangering potential victims of those who might take encouragement from such clarity. Motion, 13. If the former, then the public's interest in disclosure is *de minimis.* If the latter, then the public's interest in confidentiality is too great to overcome.

Finally, Solvay insists that disclosure of the reports is necessary to combat public misconceptions about the Columbine tragedies. Solvay does not identify what those misconceptions are or how they could inhibit prevention of future tragedies. Drs. Dietz's and March's confidence in their own ability sufficiently to educate to prevent deranged individuals from committing future atrocities is an inadequate basis for modifying the Magistrate Judge's order. The public is equally adept at comprehending the depravity under which Harris and Klebold labored. Regardless, this argument leaves a gap; Solvay does not suggest that its supposed scientific inquiry can be advanced only through public disclosure.

**C. Destruction of the Underlying Materials**

Solvay's ostensible desire to see the scientific community educate others about the "causes" of youth violence also serves as the ground for its objection to that part of the Magistrate Judge's Evidence Order requiring destruction of the depositions taken during the pendency of the case. Solvay does not explain what remains to be learned or

how the particular materials that the Magistrate Judge designated for destruction would assist that elucidation. I deny this part of Solvay's Motion without prejudice and invite Solvay to brief this issue in detail.

Accordingly, IT IS ORDERED that

(1) Solvay's Motion to Modify the Protective Order [233–1 in 00–B–808 and 365–1 in 01–B–2076] is DENIED with respect to its request for permission to publish the experts' reports and DENIED WITHOUT PREJUDICE with respect to its objection to that part of the Magistrate Judge's Evidence Order ordering that some of the materials be destroyed;

(2) Solvay shall have until October 15, 2004 to renew its objection to the Magistrate Judge's Evidence Order and all other interested parties shall have until November 1, 2004 to respond.