Roy Edward BELL, Co–Administrator of the ESTATE OF Jeremy Edward BELL, Plaintiff,

v.

BOARD OF EDUCATION OF THE COUNTY OF FAYETTE, et al., Defendants.

No. CIV.A.5:03–0334.

United States District Court, S.D. West Virginia, Beckley Division.

Dec. 3, 2004.

Richard A. Peterson, Esquire, Peterson & Gula, Greenville, PA, Wayne D. Inge, Esquire, Roanoke, VA, for Plaintiff.

Eric A. Collins, Esquire, Mary Beth Chapman, Esquire, Pullen, Fowler & Flanagan, Beckley, WV, for Defendants.

Michael D. Mullins, Esquire, Steptoe & Johnson, Charleston, WV, for Officers Dotson, Burke and Steele.

Hamilton D. Skeens, Esquire, James M. Brown, Esquire, Brown & Levicoff, Beckley, WV, for Prosecuting Attorney Paul M. Blake, Jr.

### ORDER

VANDERVORT, United States Magistrate Judge.

Plaintiff's remaining claim in this case is that Defendant Friedrichs, formerly a teacher and/or principal in the Fayette County Schools, was known by the Board and "Supervising Defendants" to be a pedophile and they, "in spite of such knowledge, failed to take any precautions or actions to prevent Friedrichs from inflicting harm upon young, male elementary children enrolled in the Fayette County School system." (Document No. 1, ¶ 10.). Plaintiff claims that as a consequence on November 8, 1997, Defendant Friedrichs administered drugs to Jeremy Bell, Plaintiff's decedent and a student of Fayette County schools, in the course of sexually assaulting him and caused Jeremy's death thus violating Jeremy's civil rights in violation of 42 U.S.C. § 1983. (*Id.*, ¶ 22.)

The following Motions are pending: Motion by Paul M. Blake, Jr., to Amend Order of September 3, 2004 (Document No. 137.), Motion for Protective Order to Quash the Depositions of Larry Dotson, Garland Burke and Everett Steele or Alternatively to Seal their Depositions (Document No. 142.), Motion for Protective Order to Quash the Deposition of Paul M. Blake, Jr., or Alternatively to Seal His Deposition (Document No. 144.), Motion to Supplement and/or Amend Order of September 3, 2004 (Document No. 145.). The Court finds that the Motions of Officers Dotson, Burke and Steele and Mr. Blake to Quash or Alternatively to Seal their Depositions (Document Nos. 142 and 144.) should be **DENIED**. The Court finds that the Motions to Amend Order of September 3, 2004 (Document Nos. 137 and 145.), considered Motions to permit the attorneys for the deponents to read the transcript of the deposition of Sheriff Laird, should be **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

By Order filed on November 10, 2003, Judge Haden granted "judgment in favor of Defendants on Plaintiff's Title IX claims and the claim under 42 U.S.C. § 1983 arising from his decedent's wrongful death ...." (Document No. 32.) By Memorandum Opinion and Order filed the same day, Judge Haden denied Defendant's Motion to Dismiss for failure to state a § 1983 supervisory liability cause of action. (Document No. 31.) Finding allegations contained in the Complaint that school system officials knew of

Mr. Friedrichs' proclivities and failed to prevent him from acting upon them thereby causing Jeremy Bell's constitutional injury adequate under Rule 8 of the Federal Rules of Civil Procedure, Judge Haden stated that "[w]hether the causal nexus between the supervisory actions or inaction and Jeremy's constitutional injuries ultimately is established is a question of fact that must be left for the appropriate time." (*Id.*, p. 23.)[1] Plaintiff has the burden of proving it.[2] With respect to Defendants' statute of limitations defense, Judge Haden stated as follows addressing issues of accrual and tolling:

> Jeremy's injury, the deprivation of his constitutional rights to be free of sexual abuse, accrued at the latest at the time of his death. Jeremy died on November 8, 1997. In this civil rights action the injury complained of is the deliberate indifference of Friedrichs' supervisors to his conduct leading to Jeremy's injuries. When that claim accrued is a related but independent question. Plaintiff argues he had no information that Friedrichs' supervisors had been deliberately indifferent to Friedrichs' conduct that endangered Jeremy until an investigator hired by the family provided a report about the Fayette County Board of Education on April 15, 2001. The action was brought on April 15, 2003.

> \* \* \* \* \* \*

> When the inquiry duty arose in this case, whether Plaintiff employed due diligence to inquire, and when he should have known of the supervisors' alleged malfeasance are all fact questions not amenable to a motion to dismiss. \* \* \*

> The parties have also argued whether Defendants fraudulently concealed their knowledge of and indifference to Fried-

richs' other bad conduct relevant to the allegations here. \* \* \* To toll the statute's running, "a plaintiff must state a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship[.]" The contention raises further questions, which ultimately must be determined by a fact-finder.

(*Id.*, pp. 15—18 (citation and footnote omitted)) Thus, Judge Haden clearly stated the factual and legal issues presented by the parties' claims and defenses and their respective burdens of proof.

Having made their disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure (Document Nos. 27 and 29.) and engaged in written discovery (Document Nos. 30 and 33—35.), the parties began taking depositions in April, 2004. Plaintiff subpoenaed William R. Laird, IV, currently Sheriff of Fayette County, West Virginia, to appear for deposition in May, 2004, and bring with him the "entire criminal investigation file ... in the case of *State v. Edgar W. Friedrichs, Jr.*, now pending in the Circuit Court of Fayette County, West Virginia." (Document No. 62.) Sheriff Laird, represented by Thomas J. Steele, Jr., Assistant Prosecuting Attorney of Fayette County, West Virginia, moved to quash the subpoena. (Document No. 59.) By Order filed on June 9, 2004, the Court found in view of the fact that criminal proceedings are pending against Mr. Friedrichs that the law enforcement privilege as codified at 5 U.S.C. § 552(b)(7) and *W.Va.Code* § 29B–1–4(a)(4) applied and stated that "the exemptions for law enforcement investigative records serve an important purpose, and the Federal exemption clearly contemplates deprivation of a right to a fair trial or an impartial adjudica-

---

**1.** Judge Haden's decision is published. *See Bell ex rel. Bell v. Board of Educ. of County of Fayette*, 290 F.Supp.2d 701 (S.D.W.Va.2003).

**2.** As Judge Haden pointed out in his November 10, 2003, Memorandum Opinion and Order (Document No. 31, pp 21—22.), quoting from *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994), Plaintiff must prove the following to establish supervisory liability under § 1983:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
*See also Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001), *cert. denied*, 535 U.S. 954, 122 S.Ct. 1357, 152 L.Ed.2d 353 (2002).

tion as one reason that such records should not be disclosed. This is directly in line with the concerns of the State in the instant case." The Court therefore granted Sheriff Laird's Motion to Quash the subpoena to the extent that it required that he bring the criminal investigation file respecting Mr. Friedrichs and denied the Motion to the extent that it required Sheriff Laird's deposition. (Document No. 66.) Plaintiff took Sheriff Laird's deposition on July 13 and 14, 2004. (Document Nos. 72 and 76.)

Defendants took no position respecting the subpoena of Sheriff Laird's deposition, but filed a Motion to Seal it on August, 12, 2004, claiming that Sheriff Laird identified thirteen people who allegedly had some involvement with Defendant Friedrichs and six current and/or former employees of Defendant Board of Education who are not parties to these proceedings and asserting that "[p]ublication of Sheriff Laird's deposition would violate the right to confidentiality of the students and school employees whose names are mentioned therein. Publication of these confidential portions of Sheriff Laird's deposition would further seriously impede and jeopardize the prosecution of Edgar W. Friedrichs, Jr., in the criminal case still pending in the Circuit Court of Fayette County, West Virginia, by—among other things—tainting the jury pool." (Document No. 97.)[3] By Order filed on September 3, 2004, the Court granted Defendants' Motion to Seal the Deposition of Sheriff Laird noting that Sheriff Laird's deposition was properly not yet part of the record in this case and finding that "justice requires that the deposition be sealed. The interests of the persons whom Sheriff Laird named in testifying in maintaining confidentiality, protecting their reputations and remaining free of the annoyance and embarrassment which would likely result if Sheriff Laird's deposition were published clearly outweigh any interests the Plaintiff might have in making the deposition available to the public and the media." The Court ruled that "[t]he parties and their representatives are directed to make no disclosure of the contents of Sheriff Laird's deposition and notify the reporter who transcribed the deposition of the Court's ruling. The parties may of course submit a transcript of Sheriff Laird's deposition or portions of it as an exhibit to Motions, but the parties must redact all references to persons not parties to these proceedings, including references which might indirectly disclose their identities, and file such Motions with a Motion to Seal them to the extent that they include Sheriff Laird's deposition." (Document No. 101.)

Plaintiff initially noticed the depositions of Larry Dotson, former Sheriff of Fayette County, and Garland Burke and Everett Steele, former Sheriff's Detectives of Fayette County, for November 8 (Document Nos. 117—119.) and the deposition of Paul M. Blake, Jr., Prosecuting Attorney of Fayette County, West Virginia, for November 10, 2004. (Document No. 121.) Plaintiff rescheduled the depositions for November 22, 2004. (Document Nos. 132—135.) The depositions were again rescheduled for November 29, 2004. (Document Nos. 138—141.) In view of the issues presented by the pending Motions, by Order entered on November 24, 2004, the Court continued the depositions and scheduled a hearing upon them on Friday, December 3, 2004. (Document No. 151.)

By his Motion to Amend Order of September 3, 2004 (Document No. 137.), Mr. Blake requests that the Court's Order of September 3, 2004, sealing the deposition of Sheriff Laird be modified to permit his counsel, Hamilton D. Skeens of the law firm of Brown & Levicoff, P.L.L.C., to read Sheriff Laird's deposition in preparation for Mr. Blake's deposition. Plaintiff filed a Response to Mr. Blake's Motion on November 22, 2004. (Document No. 146.)

The subject matter of Sheriff Laird's deposition which has been sealed would be of no use or value to counsel for Paul M. Blake, Jr., except to tip this individual off about the nature of the inquiries made by Plaintiff's counsel concerning their actions during the initial phase of the criminal

---

**3.** The Defendants' Motion to Seal indicates that the State of West Virginia represented by Thomas J. Steele, Jr., Assistant Prosecuting Attorney of the Fayette County Prosecuting Attorney's Office, joined in it.

investigation of the death of Jeremy Edward Bell. To disclose such information to this witness would have the effect of permitting this witness to consult with other witnesses scheduled for deposition and prepare a unified front concerning their conduct, when reasonable suspicion exists that law enforcement officials may have engaged in a cover-up of criminal activity and when Plaintiff and others ... have called for federal intervention to investigate what occurred during the initial phases of said investigation. One of the purposes for taking the deposition of Mr. Blake is to develop evidence which can be used to establish that Fayette County law enforcement authorities, upon whom the Fayette County Board of Education and L.A. Coleman relied, acted to conceal relevant information which would have provided notice to Plaintiff that the Board had actual or constructive notice of the danger presented by Edgar Friedrichs to young male students.

Officers Dotson, Burke and Steele, represented by Michael D. Mullins of the law firm of Steptoe & Johnson, PLLC, filed their Motion for a Protective Order to Quash or Alternatively to Seal their Depositions and a Memorandum in Support on November 17, 2004. (Document Nos. 142 and 143.) Paul M. Blake, Jr., filed his Joinder in the Motion of Officers Dotson, Burke and Steele for Protective Order and Motion to Quash or Alternatively Seal his Deposition on November 17, 2004. (Document No. 144.) Officers Dotson, Burke and Steele assert that "Plaintiff is conducting a focused media and grass roots campaign attempting to sully the reputation of several Non–Party Public Employees, including employees of the Fayette County Sheriff's Department and the Fayette County Prosecutor's Office." (Document No. 143, p. 2.) They state that they "have nothing to add to the issue of this case as [they] had never heard of Mr. Friedrichs prior to the incident which gives rise to this Complaint. * * * Thus, [their] depositions will be a waste of their time." Additionally, they state that "[d]uring Sheriff Laird's deposition, ... Plaintiff repeatedly quizzed Sheriff Laird regarding allegations of sexual improprieties involving minors which were completely unrelated to the instant case. Obviously any questions regarding allegations of sexual assault are of an extremely private nature, especially when the allegations deal with minors. The anticipated questions in this regard offer independent reason to quash and/or seal the pending depositions." (Id., p. 4.) Officers Dotson, Burke and Steele contend that Rule 26(b)(1) allowing discover of "any matter ... that is relevant to the claim or defense of any party" is not applicable when discovery is sought from non-party witnesses. Rather, they claim that when a Protective Order is sought, the Court must weigh the party's need for the discovery against the non-party witnesses interest in non-disclosure. (Id., pp. 5–7.) They state that "the Court should consider what limited knowledge these individuals have regarding the facts of the case. Primarily, these individuals have knowledge regarding the contents of the initial criminal investigation file concerning Bell's death. This Court has already made it clear that such information is not discoverable under the West Virginia Freedom of Information Act and attendant case law." (Id., p. 6.) Additionally, they state that the Court should quash their deposition subpoenas because further public disclosure of information compiled in the criminal investigation into Jeremy Bell's death could seriously jeopardize Mr. Friedrich's right to a fair trial in the State's case against him. Officers Dotson, Burke and Steele further state that the Court should quash their deposition subpoenas because "[t]here is a warranted concern that [their] testimony may reveal names of other individuals whose identities should remain private and confidential." (Id., pp. 6–7.) Finally, they claim that their deposition subpoenas should be quashed to protect them against Plaintiff's further harassment of them "through the press and Plaintiff's grass roots campaign." They state that [t]he depositions ... are clearly pretext for the Plaintiff's ultimate desire to smear the good reputation of law enforcement officers in Fayette County. This abuse of discovery process is not legitimate and should not be encouraged or allowed." (Id., pp. 7–8.) Alternatively, Officers Dotson, Burke and Steele state that their deposition testimony should be sealed against public disclo-

sure in consideration for any personal and confidential information disclosed in them as was the testimony of Sheriff Laird. (*Id.,* pp. 8–9.) If the Court determines that their depositions should proceed, they request that the Court "issue a Protective Order sealing their testimony until the trial of this case, or until such time as the Court deems fit to order them unsealed. In sealing the depositions ..., they ... request that the Court include language ... barring any public portrayal of the testimony therein and any reference thereto in further documents filed with this Court or otherwise prepared, that are not also filed under seal." (*Id.,* p. 10.) They seek an award of costs incurred in filing their Motion because they proposed the entry of a Protective Order in view of the Court's September 3, 2004, Order sealing Sheriff Laird's deposition allowing that their depositions would proceed but be sealed and Plaintiff did not accept their proposal. (*Id.,* pp. 9–10.) Mr. Blake states in his Joinder in Officers Dotson, Burke and Steele's Motion and Motion for Protective Order (Document No. 144.) that "he has an obligation as the Prosecuting Attorney for Fayette County to ensure that Edward W. Friedrichs, Jr., obtains a fair trial by an unbiased jury in Fayette County. Moreover, the Plaintiff and his counsel's propensity to try their case in the media may taint the potential jury pool in Fayette County adversely affecting the ability of Mr. Friedrichs to obtain a fair trial on a presently pending indictment in the Circuit Court of Fayette County if Mr. Blake's deposition occurs or is not otherwise sealed."

Plaintiff filed a Response to the Motion for Protective Order and a Memorandum in Support on November 29, 2004. (Document Nos. 152—153.) Plaintiff states in opposition to the Motions of Officers Dotson, Burke and Steele and Prosecuting Attorney Blake that

The primary purpose for scheduling these depositions is to develop evidence which can be used to establish that Fayette County law enforcement authorities, upon whom the Fayette County Board of Education and Superintendent L.A. Coleman relied to conduct a competent investigation of the suspicious death of Jeremy Edward Bell, acted to conceal relevant information which would have provided notice to Plain-

tiff that the Board had actual or constructive notice of the danger presented by Edgar Friedrichs to young male students. Plaintiff's claims rely on establishing that the administrators, employees and/or agents of the Board of Education acted with deliberate indifference to the pervasive and unreasonable risk of constitutional injury posed by Edgar Friedrichs.

(Document No. 153, p. 2.) Plaintiff states further that "Plaintiff intends to establish that there is a reasonable basis to conclude that the Fayette County Prosecuting Attorney, who is statutory counsel of the Board of Education under West Virginia statute, in concert with the Sheriff's Department, concealed from the Plaintiff and the public-at-large significant evidence of reasonable suspicion of foul play of the Board's employee Friedrichs which would have led to the discovery of the Board's actual or constructive knowledge of the danger presented by Friedrichs to young male students under his supervision." (*Id.,* pp. 3–4.) Plaintiff states that his private investigator began his investigation in 1999 and gave Plaintiff an oral report on April 15, 2001. (*Id.,* p. 5.) Plaintiff states that by that time, his investigator had learned that Mr. Friedrichs had a "peculiar and obsessive relationship with Jeremy Bell ... at Beckwith Elementary School and had a peculiar and unnatural relationship with another 12 year old ... at Powellton Elementary School which had been brought to the attention of school administrators in 1984." (*Id.,* pp. 5–6.) Plaintiff indicates that he has a November, 1997, "Report of Investigation" of Officer Burke, a "Voluntary Statement" of Mr. Friedrichs and hand written notes and a transcript of interviews of another juvenile in November and December, 1997. Plaintiff states that it is undisputed that the Board adopted a policy mandating investigation of sexual harassment upon receipt of a complaint but did not investigate Jeremy Bell's death because the Fayette County Sheriff's Office conducted a criminal investigation. (*Id.,* pp. 10–11.) Plaintiff states that "[d]eposing Deputy, Burke, Deputy Steele, Sheriff Dotson and Prosecuting/statutory counsel Blake provides Plaintiff with the opportunity to establish precisely

what information was communicated to the School Board and Superintendent during the investigation and what information was willfully and deliberately withheld. It also provides Plaintiff with the opportunity to establish what information was communicated by the School Board and Superintendent to the investigators and what was deliberately and willfully withheld. Such evidence could be critical in the determination of whether the School Board, the Superintendent or the Prosecutor/statutory counsel engaged in conduct which would toll the running of the statute of limitations." (*Id.*, p. 12.) Addressing the arguments of Officers Dotson, Burke and Steele, Plaintiff first asserts that Rule 26(b)(1) applies to all witnesses including non-party witnesses. (*Id.*, p. 13.) Citing Judge Haden's November 10, 2003, Order, Plaintiff states further that he is entitled to explore these witnesses' "knowledge pertinent to the issue of whether information was withheld from the Plaintiff which prevented Plaintiff from discovery of the alleged wrongful conduct of the Board and its administrators within two years after Jeremy Bell's death." (*Id.*, p. 14.) Plaintiff states that his interest in obtaining this information outweighs the deponents' interests in preventing it as they have stated them. Arguing against the sealing of the deponents' depositions, Plaintiff states that "the subject matter of these depositions would primarily be related to the issue of the statute of limitations and would focus on what occurred during the period of time pre-dating Sheriff Laird's commencement of his investigation." Plaintiff indicates that it is premature to consider sealing the depositions because they have not been taken yet. In any event, Plaintiff indicates that he agrees that names of juveniles identified in the depositions should be redacted and shares the interest of all that Mr. Friedrichs' criminal trial be conducted before a fair and impartial jury. (*Id.*, p. 17.) Finally, Plaintiff requests an award of costs stating that the deponents "have used the Court in an attempt to protect their own personal interests, not the interests of Edgar Friedrichs to a fair and impartial trial or the interests of the citizens of Fayette County whom they have sworn to protect." (*Id.*, pp. 18–19.)

On November 18, 2004, Sheriff Laird filed his Motion to Supplement and/or Amend Order of September 3, 2004. (Document No. 145.) Sheriff Laird requests that the Court modify its September 3, 2004, Order to permit his attorney, Mr. Mullins, to read his deposition in preparation for the deposition of Officers Dotson, Burke and Steele. Plaintiff filed a Response to Sheriff Laird's Motion on September 22, 2004. (Document No. 147.) Plaintiff first asserts in opposition to the Motion that Sheriff Laird did not retain Mr. Mullins to represent him. Second, Plaintiff states essentially the same grounds as he asserts in opposing Mr. Blake's request that his attorney be entitled to read Sheriff Laird's deposition, namely that, knowing what Sheriff Laird said in his deposition, Mr. Blake might consult with others in the preparation of "a unified front." On November 23, 2004, Officers Dotson, Burke and Steele filed a Reply to Plaintiff's Response stating that "[a]fter the undersigned counsel filed the above-referenced Motion, Sheriff Laird advised the undersigned counsel that Sheriff Laird does not believe that he needs legal representation in this matter at this time. Accordingly, the undersigned counsel wishes to amend his previous filing so as to advise the Court that the Motion to Supplement and/or Amend the Order of September 3, 2004 is not being brought on behalf of Sheriff Laird, but is instead being brought on behalf of Garland Burke, Everett Steele and Larry Dotson." (Document No. 150.)

Defendants have taken no position respecting the issues presented by the pending Motions.

### DISCUSSION

#### (1) *Motions to Quash Subpoenas.*

The Court first addresses the claim of Officers Dotson, Burke and Steele that Rule 26(b)(1)'s allowance of "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" is "significantly limited when discovery is sought from a Non–Party." (Document No. 142, p. 5.) They claim that "[t]he distinction between parties and non-parties is that this relevance definition in Rule 26(b)(1) does not

apply to non-parties." (*Id.*) Citing *Bio–Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D.Mass.1991), *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D.Nev.1986) and *Slater Steel, Inc. v. Vac–Air Alloys Corp.*, 107 F.R.D. 246 (W.D.N.Y.1985), they claim that the test is whether the party's need for discovery outweighs the non-party's interest in non-disclosure. The Court notes that while the cases cited by Officers Dotson, Burke or Steele state that a party must make a stronger showing of relevance when seeking discovery from a non-party than from a party, they deal with challenges to requests for production and inspection of property of non-parties, not the subpoenaing of non-party depositions. This distinction is important in considering the application of the Rules in this case. Respecting the taking of non-party depositions, the Court notes that Rule 30(a)(1) states that "[a] party may take the testimony of any person, including a party, by deposition ...." Rule 45 establishes the procedure for issuance and service of, limitations upon and duties in responding to subpoenas. Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure states that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it * * * (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." The Advisory Notes state that "[p]aragraph (c)(3) explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power. It ... tracks the provisions of Rule 26(c)." The Advisory Notes state further that "[c]lause (c)(3)(A)(iv) requires the court to protect all persons from undue burden imposed by the use of the subpoena power. Illustratively, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute, especially so if the adversary would be required to incur substantial travel burdens."

 It is clear that the standards set forth in the Rules, and particularly the Rule 26(b)(1) limitation of discovery to information relevant to the claim or defense of any party, apply equally with respect to depositions of parties and non-parties. The Court further finds that Officers Dotson, Burke and Steele do not claim that the subpoena requires disclosure of privileged or other protected matter or subjects them to undue burden. The Court further finds that evidence, as Defendants represented in requesting that Sheriff Laird's deposition be sealed, of other students' involvement with Mr. Friedrichs, and further evidence, as Plaintiff represents, that Defendants knew of Mr. Friedrichs' prior misconduct with a student suggests that the violation of Jeremy's constitutional rights was foreseeable to the Board. It is conceivable therefore that Officers Dotson, Burke and Steele obtained information in these respects in the course of their investigation into the death of Jeremy Bell. If so, it is material to Plaintiff's claim of supervisory liability under § 1983. It is further conceivable that Officers Dotson, Burke and Steele obtained information germane to Plaintiff's assertion that Defendants took steps to conceal their knowledge of and indifference to Mr. Friedrichs' misconduct both before and after Jeremy's death. Plaintiff is entitled to ask the Officers whether they obtained information in the course of their investigation that by act or omission, verbally or in writing, directly or indirectly, the Defendants sought in any way to conceal their knowledge of and indifference to Mr. Friedrichs' misconduct before November 8, 1997, or thereafter, to prevent the disclosure of information pertaining to their knowledge, if any, of Mr. Friedrichs' proclivities and/or delay proceedings as long as possible while the statute of limitations was running. For these reasons, the Court concludes that the Motion to Quash of Officers Dotson, Burke and Steele must be denied.

 A different standard applies in consideration of Mr. Blake's Motion to Quash. The Court adopts the reasoning of the Court in *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D.N.C.1987)(Eliason, M.J.) and *Southern Film Extruders, Inc. v. Coca–Cola Company*, 117 F.R.D. 559 (M.D.N.C.1987)(Eliason, M.J.). In *N.F.A. Corp.*, a patent infringement action, defendant sought to depose plaintiff's attorney. In *Southern Film*, defendants sought to de-

pose two former attorneys who did work for a special committee of plaintiff's board of directors. Because Mr. Blake is the Fayette County Prosecuting Attorney, has representational responsibilities under West Virginia statute in behalf of the Board of Education [4] and has through his office represented Sheriff Laird and the State of West Virginia in this case, the Court deems his circumstances generally similar to those of the attorneys in these cases.

In *N.F.A. Corp.*, Magistrate Judge Eliason recognized that while the Rules of Civil Procedure do not prohibit depositions of parties' attorneys, nevertheless liberally allowing them would be disruptive. He stated that "[f]or these reasons, it is appropriate to require the party seeking to depose an attorney to establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp.*, 117 F.R.D. at 85. Judge Eliason stated a two-factor test as follows:

> In seeking to depose a party's attorney, the movant must demonstrate that the deposition is the only practical means available of obtaining the information. If there are other persons available who have the information, they should be deposed first. Also, other methods, such as written interrogatories which do not involve the same dangers as an oral deposition, should be employed. Second, the movant should show that the information sought will not invade the attorney-client privilege or the attorney's work product. Finally, the information must be relevant and the need for it outweighed by the disadvantages inherent in deposing a party's attorney.

*N.F.A. Corp.*, 117 F.R.D. at 86 (Citations omitted). Because defendant did not meets its burden, the Court granted plaintiff's Motion for a protective order prohibiting plaintiff's attorney's deposition. (*Id.*) In *Southern Film*, the circumstances were different, as the Court stated, because the defendants were seeking to take the depositions of plain-

tiff's former, not current, attorneys. Nevertheless, the Court found it appropriate to adopt its reasoning in *N.F.A. Corp.* in large part and require that "the deposing party must show the propriety and need for the deposition." *Southern Film*, 117 F.R.D. at 561. Judge Eliason stated that "[r]equiring the deposing party to preliminarily justify the deposition can alleviate unnecessary fears and disputes and more swiftly reduce the scope of the controversy." (*Id.*) He found that the defendants had indicated specifically the factual matters into which they intended to inquire and authorized the depositions upon those matters. *Southern Film*, 117 F.R.D. at 562. *See also Doubleday v. Ruh*, 149 F.R.D. 601, 612—614 (E.D.Cal. 1993)(A § 1983 excessive force case in which defendants' motion to quash deposition of deputy district attorneys was granted because plaintiff's criminal prosecution was completed and "disclosure of the prosecutorial file is not only a good alternate means, but may also be more complete and accurate.")

Mr. Blake is not representing a party in these proceedings but has had a presence in this case as an attorney insofar as his office apparently represented Sheriff Laird in matters pertaining to his deposition and represented the State as it joined in the Motion to Seal Sheriff Laird's deposition. Because Mr. Blake is not representing a party in this case and is evidently no longer actively representing Sheriff Laird, the likelihood of disruption of these proceedings by allowance of his deposition is diminished. His circumstances are more like those of the attorneys in *Southern Film*. The Court must therefore determine whether Plaintiff has adequately demonstrated the propriety and need for Mr. Blake's deposition. The Court finds that Plaintiff indicates that in subpoenaing the depositions of Officers Dotson, Burke and Steele and Mr. Blake, he intends to inquire respecting (1) *Defendants'* knowledge of and indifference to Mr. Friedrichs' misconduct and (2) *Defendants'* acts or omissions to con-

---

4. *W.Va.Code* § 7–4–1 provides that "[i]t shall ... be the duty of the prosecuting attorney to attend to civil suits in such county in which the State, or any department, commission or board thereof, is interested, and to advise, attend to, bring, prose-

cute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county board of education is interested."

ceal it. As Judge Haden stated, Plaintiff has the burden on the issue of the tolling of the statute of limitations of proving "whether *Defendants* fraudulently concealed their knowledge of and indifference to Friedrichs' other bad conduct relevant to the allegations here." (Document No. 31, p. 17 (Emphasis added)) [5] Because Mr. Blake's office has successfully prosecuted Mr. Friedrichs upon charges of sexual abuse [6] and is now pursuing murder charges against him, Mr. Blake is no doubt informed of the investigative findings of Officers Dotson, Burke and Steele and may also have independent knowledge of facts material to the issues at hand as stated specifically above through conversations and communications with Defendants. The Court finds therefore that Mr. Blake qualifies as a fact witness in this case and no alternate means exists in view of the pending prosecution of Mr. Friedrichs for determining what Mr. Blake might know. The Court finds that Mr. Blake asserts no privilege or undue burden which would require the Court to quash the subpoena of his deposition. The Motion to quash the subpoena of Mr. Blake's deposition will therefore be denied.

### (2) *Motions for Permission to Read Sheriff Laird's Deposition.*

Mr. Mullins, representing Officers Dotson, Burke and Steele, and Mr. Skeens, representing Mr. Blake, request permission to read Sheriff Laird's deposition prior to the depositions of their clients. Mr. Skeens does so though Mr. Blake's office represented Sheriff Laird at his deposition. Plaintiff opposes it complaining that it is evident that

**5.** Plaintiff apparently contends that actions or omissions of Fayette County law enforcement officers and the Office of the Prosecuting Attorney facilitated Defendants' concealment. The Court finds from the record that this allegation is little more than conjecture based upon the delay of several years in prosecuting Mr. Friedrichs after Jeremy Bell's death when, as Plaintiff argues, there was ample evidence to support Mr. Friedrichs' prosecution. Plaintiff is reminded that the question is whether *Defendants* fraudulently concealed information material to his claims, not whether Fayette County law enforcement or the Prosecuting Attorney's Office did so.

**6.** Mr. Friedrichs was convicted of sexual abuse in Fayette County on January 30, 2002, more than a year before this case was initiated.

law enforcement officers acted to cover up Mr. Friedrichs' criminal activity and, knowing about Sheriff Laird's deposition, the deponents will develop "a unified front." No authority ·is cited for either position. The Court views the circumstances presented by the request as similar to those presented when a party moves to sequester deposition witnesses.

Federal Rule of Civil Procedure 30(c) governs the conduct of depositions stating in its first sentence that "[e]xamination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615." [7] The Advisory Committee Notes explain how the inapplicability of Rule 615 impacts attendance at depositions as follows:

> [O]ther witnesses are not automatically excluded from a deposition simply by the request of a party. Exclusion, however, can be ordered under Rule 26(c)(5) when appropriate; and if exclusion is ordered, consideration should be given as to whether the excluded witnesses likewise should be precluded from reading, or being otherwise informed about, the testimony given in the earlier depositions.

Clearly deposition witnesses are not subject to sequestration as trial witnesses are simply upon the request of a party, and exclusion of witnesses, when not agreed upon as appropriate by the parties, must be obtained by Order of the Court pursuant to Rule 26(c)(5). Rule 26(c)(5) provides as follows:

**7.** Federal Rule of Evidence 615 provides respecting the exclusion of witnesses as follows:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.

196

**Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppressive or undue burden or expense, including one or more of the following:

\* \* \* \* \* \*

(5) that discovery be conducted with no one present except persons designated by order of the court[.]

The "good cause" standard for granting a protective order therefore applies to consideration of the exclusion of witnesses from depositions, and the party seeking the protective order bears the burden of showing good cause. *See Jones v. Circle K Stores, Inc.,* 185 F.R.D. 223, 224 (M.D.N.C.1999). This "contemplates a *particular and specific demonstration of fact* as distinguished from stereotyped and conclusory statements." *Id., quoting In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir.1998) *quoting United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978). Issuance of a protective order without "a particular and specific demonstration of fact" constitutes an abuse of discretion. *In re Terra Int'l,* 134 F.3d at 306. Rule 26(c)(5) "and the Court's discretion under it, should be invoked sparingly, else the openness on which our legal system properly prides itself would be impaired." *Kerschbaumer v. Bell,* 112 F.R.D. 426 (D.D.C.1986). In *Metal Foil Products Mfg. Co. v. Reynolds Metals Co.,* 55 F.R.D. 491, 493—94 (E.D.Va. 1970), Judge Merige apparently issued a protective order permitting plaintiffs full discovery of defendants internal marketing information but prohibiting plaintiffs' representatives other than counsel from being present. In *Jones, supra,* a race discrimination suit against a former employer, the Plaintiff's motion for a protective order to prevent two of the defendant's employees from attending each other's depositions was denied. Plaintiff claimed that allowing the employees to attend each other's depositions might affect her right to a just trial. The Court essentially found that Plaintiff's reason for seeking a protective order was based upon circumstances which commonly occur in employment litigation and indicated no specific showing of potential harm to the Plaintiff. *Jones,* 185 F.R.D. at 224. *See also Lee v. Denver Sheriff's Dep't,* 181 F.R.D. 651 (D.Colo.1998)(Plaintiff inmate's motion to prohibit defendant officers from attending each other's depositions in an excessive force case denied.); *Tuszkiewicz v. Allen Bradley Co.,* 170 F.R.D. 15, 17 (E.D.Wis.1996); *James v. Roberts,* 163 F.R.D. 260 (S.D.Ohio 1995)(Plaintiff inmate entitled to attend depositions of defendant correctional officers in civil rights suit); *BCI Comm. Sys., Inc. v. Bell Atlanticom Sys., Inc.,* 112 F.R.D. 154, 155, 160 (N.D.Ala.1986).

■ It therefore appears clear as a general matter that any party or representative of a party or witness with information relevant to the claims for relief or defenses, investigator or expert witness in a case can attend depositions in the case. They may be excluded on the other hand upon a specific showing that some harm or prejudice might occur to a party or the deponent through the disclosure of secret or sensitive information learned by virtue of their attendance and disseminated thereafter. Of course, they also might be excluded upon a specific showing that they might act coercively or disruptively.

■ Plaintiff has not established good cause to support his assertion that the attorneys for the deponents should be prohibited from reading the deposition of Sheriff Laird. Plaintiff has failed to make a specific showing of harm that in effect would justify sequestration. Plaintiff has offered no specific and direct evidence of any plot or conspiracy in law enforcement to cover up Mr. Friedrichs' criminal activity. Plaintiff has offered no specific information evidencing that the deponents cannot be trusted to tell the truth or that knowing of Sheriff Laird's testimony will affect their testimony. For these reasons, the requests that Mr. Mullins and Mr.

Skeens be permitted to read Sheriff Laird's deposition before their clients' depositions are granted. Additionally, Officers Dotson, Burke and Steele and Mr. Blake are permitted to read Sheriff Laird's deposition in preparation for their depositions.

### (3) *Motions to Seal Depositions.*

As the Court stated in ruling upon Defendants' request that Sheriff Laird's deposition be sealed, the public has the common law right to inspect and copy judicial records and documents, and the right to access to judicial proceedings. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *In re Knight Publishing Company*, 743 F.2d 231, 235 (4th Cir. 1984). As is clearly indicated, however, at Federal Rule of Criminal Procedure 26(c)(6), public access to discovery materials may be limited. The requisite is a showing of good cause. *Taylor v. Solvay Pharmaceuticals, Inc.*, 223 F.R.D. 544, 547 (D.Colo.2004). Good cause existed to seal the deposition of Sheriff Laird because it contains the names of other minors found by investigation possibly to have been involved with Mr. Friedrichs' and former and current employees of the Board of Education and the Court deemed their interests in maintaining confidentiality, protecting their reputations and remaining free of annoyance and embarrassment to outweigh any interest of the Plaintiff in the public disclosure of the information. The depositions of Officers Dotson, Burke and Steele and Mr. Blake have yet to be taken, and therefore there is nothing at this point to seal. The Court regards the requests to seal the depositions before they are taken premature and denies them.

It is therefore hereby **ORDERED** that the Motions of Officers Dotson, Burke and Steele and Mr. Blake to quash the subpoenas of their depositions or alternatively to seal them (Document Nos. 142 and 144.) are **DENIED**. Plaintiff is entitled to proceed with their depositions limiting their questioning to those matters specified by Judge Haden in his November 10, 2003, Order and discussed herein. The parties are directed to focus prior to the taking of the depositions upon the fundamental legal issues arising by virtue of their claims and defenses and the elements they will need to prove to sustain them as Judge Haden stated them and delineate and distinguish the relevant from the material facts, the latter being those facts so closely related and pertinent to the fundamental issues that the issues cannot be dispensed without their consideration. The Court expects that the parties will concentrate upon developing the facts material to their claims and defenses and probe for relevant facts as necessary. The Court further directs that, while the Court denies the Motions to seal the depositions as premature, the parties regard the Court's concern for the confidentiality of information respecting other students who were possibly involved with Mr. Friedrichs and former and current employees of the Board of Education as paramount and pervasive. To the extent that there is testimony directly or indirectly referencing them, it shall not be disclosed. Finally, it is hereby **ORDERED** that the Motions to permit Mr. Mullins and Mr. Skeens to read the transcript of the deposition of Sheriff Laird prior to the depositions of their clients (Document Nos. 137 and 145.) are **GRANTED**. Plaintiff shall provide the transcript of Sheriff Laird's deposition to Mr. Mullins and Mr. Skeens. They and Officers Dotson, Burke and Steele and Mr. Blake shall be required to abide by all of the restrictions upon disclosure of the contents of Sheriff Laird's deposition stated in the Court's September 3, 2004, Order.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the rulings set forth above on these non-dispositive motions may be contested by filing, within 10 days, objections to this Order with Chief Judge Faber. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found to be clearly erroneous or contrary to law.

The Clerk is hereby directed to send a copy of this Order to counsel of record.