John MUNSELL, Appellant–Plaintiff,

v.

William HAMBRIGHT, Counseling Associates, Kathy Byler, and Holy Cross Counseling Group, Appellees–Defendants.

No. 43A03–0202–CV–50.

Court of Appeals of Indiana.

Oct. 30, 2002.

Phillip J. Troyer, Boeglin & Troyer, PC, Fort Wayne, IN, Attorney for Appellant.

Eric D. Johnson, Kightlinger & Gray, Indianapolis, IN, Attorney for Appellees William Hambright and Counseling Associates.

Dane L. Tubergen, Hunt Suedhoff Kalamaros, LLP, Attorney for Appellees Kathy Byler and Holy Cross Counseling Group.

Melody Dilk, Indianapolis, IN, Attorney for Amicus Curiae Indiana Psychological Association.

## OPINION

KIRSCH, Judge.

John Munsell appeals the trial court's denial of his motion for partial summary judgment and its grant of summary judgment in favor of William Hambright, Counseling Associates, Kathy Byler, and Holy Cross Counseling Group. He also appeals the trial court's denial of his request for attorney's fees incurred in quashing subpoenas. He raises the following restated issues for review:

I. Whether the trial court erred in refusing to award Munsell attorney's fees incurred in quashing subpoenas issued by counsel for Hambright and Counseling Associates intended to discover Munsell's confidential mental health records.

II. Whether a genuine issue of material fact exists that precludes summary judgment on Munsell's claims of malpractice, outrage, and fraud.

We affirm in part, reverse in part, and remand for a determination of attorney's fees.

### FACTS AND PROCEDURAL HISTORY

In 1999, Jean Northenor, executive Vice–President of the Lake City Bank ("the Bank"), heard a rumor that Munsell, the manager of the Shipshewana branch of

the Bank, had engaged in voyeuristic activity. On October 1, 1999, Northenor confronted Munsell about the rumors. Munsell became very upset, and Northenor suggested that he meet with Hambright for counseling at the Bank's expense. Munsell agreed, and Northenor called Hambright to facilitate the meeting.

Munsell met with Hambright for counseling. Hambright asked Munsell to sign a release for him to disclose information to Northenor to allow him to explain to Northenor that Munsell required a leave of absence. Hambright contacted Northenor and explained that Munsell suffered from a severe emotional condition and needed a leave of absence.

Munsell later telephoned another bank employee and attempted to resign. During this conversation, Munsell behaved so irrationally that the employee contacted Northenor. Northenor contacted Hambright, who told Northenor that Munsell had a serious behavior problem, was unstable, and presented a suicide risk. As a result, Hambright directed Northenor to call local law enforcement authorities. Northenor called the local police and requested that they confirm Munsell's safety. On the following day, Hambright and Northenor again discussed Munsell's condition.

On October 15, 1999, Munsell attended a therapy session with Gary Yoder of Oaklawn Psychiatric Center. The Bank placed Munsell on a thirty-day mandatory leave. Munsell asked Yoder to contact the Bank and inquire as to his employment status. Yoder spoke with Northenor and told her that Munsell had been referred for a psychosexual evaluation for the purpose of making a diagnosis regarding voyeurism. Yoder referred Munsell to Holy Cross, which specialized in providing counseling to sex offenders.

On October 29, 1999, Munsell attended a therapy session with Holy Cross employee Cathy Watkins. As a result of this session, Watkins diagnosed Munsell as a voyeur. On November 2, 1999, Munsell attended a session at Holy Cross with Byler, who presented herself as a therapist, although she was actually a student in training. Munsell stated, and Byler agreed, that Munsell's emotional state would improve if he were allowed to return to work. At Munsell's request, Byler agreed to contact Northenor after Munsell signed a consent to release information. Byler then spoke with Northenor to discuss the possibility of Munsell returning to work. On November 4, 1999, the Bank communicated its decision to Munsell to terminate his employment. On Northenor's recommendation, Munsell resigned his position.

In June 2000, Munsell filed suit against Hambright, Counseling Associates, Byler, and Holy Cross. In October 2000, Munsell filed his first amended complaint and in December 2000, Munsell filed his second amended complaint alleging multiple claims against each defendant including counts for malpractice, fraud, and outrage.

During discovery, counsel for Hambright and Counseling Associates issued subpoenas to obtain Munsell's mental health records. Munsell's counsel contacted Hambright's counsel and informed her that by statute such records could not be subpoenaed, but rather, that a hearing must be conducted prior to their discovery. Nonetheless, Hambright's counsel refused to withdraw the subpoenas. Accordingly, Munsell filed a motion to quash the subpoenas. His motion also included a request for a protective order to prevent the defendants from discovering the name and address of the victim of Munsell's voyeuristic activity and a request for attorney's fees. The trial court granted Munsell's motion to quash the subpoenas, but denied

his motion for a protective order regarding his victim's identity. In addition, the trial court denied Munsell's request for attorney fees incurred as a result of the motion to quash.

In September 2000, Munsell moved for summary judgment. In November 2000, the defendants moved for summary judgment. After a hearing, the trial court denied Munsell's motion and granted the defendants' motions. Munsell now appeals.

## DISCUSSION AND DECISION

### I. Attorney's fees for motion to quash

■ Munsell first contends that the trial court erred in refusing to award him attorney's fees that he incurred in quashing subpoenas issued by counsel for Hambright and Counseling Associates seeking to obtain Munsell's confidential mental health records.

Trial Rule 26(C) allows a court, upon a party's motion, to take measures to limit discovery when required to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. One such measure is issuing a protective order that the requested discovery not be had or that certain matters not be inquired into. The provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion. Ind. Trial Rule 26(C). That rule states that if the motion for a protective order is granted, the court shall, after the opportunity for a hearing, require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or

that other circumstances make an award of expenses unjust. T.R. 37(A)(4).

If the motion is denied, the court must order the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. *Id.*

Finally, if the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner. *Id.*

■ Thus, when a protective order is either entered or denied, a presumption arises that the trial court will also order reimbursement of the prevailing party's reasonable expenses. *Penn Cent. Corp. v. Buchanan,* 712 N.E.2d 508, 511 (Ind.Ct. App.1999), *trans. denied.* This award of fees is mandatory, subject only to a showing that the losing party's conduct was substantially justified or that other circumstances make an award of expenses unjust. *Id.* A person is "substantially justified" in seeking to compel or in resisting discovery, for purposes of avoiding the sanctions provided by T.R. 37(A)(4), if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery. *Id.*

Here, the parties disagree as to whether the presumption applies. The defendants contend that because Munsell's motion for a protective order with regard to his victim's name was denied, the trial court denied the motion in part and granted it in part, and thus there is no presumption that Munsell is entitled to attorney's fees as the prevailing party.

Although Munsell's motion to quash also includes a request for a protective order with regard to the identity of his victim, the two issues are discrete. As to the motion to quash, Munsell prevailed and the presumption applies. Further, the primary motivation for filing the motion was to quash the subpoenas for Munsell's mental health records. Hambright's counsel's decision to continue her course and issue the subpoenas after speaking with Munsell's counsel necessitated the filing of the motion. Thus, we hold that Munsell was entitled to attorney's fees unless Hambright's counsel was substantially justified in her actions.

IC 16–39–2–7 provides that a mental health record is not discoverable or admissible in any legal proceeding without the consent of the patient, except as provided for in IC 16–39–2–8, which states that a court may order the release of a patient's mental health record without the patient's consent upon the showing of good cause following a hearing. Moreover, IC 16–39–3–3 states that a party to a legal proceeding who seeks access to a patient's mental health record without the patient's written consent may file a petition requesting a release of the patient's mental health record. In light of these statutes, we cannot conclude that Hambright's counsel was substantially justified in seeking Munsell's mental health records without his consent via subpoenas, particularly after Munsell's counsel alerted Hambright's counsel to the relevant statutes. Furthermore, the record discloses no circumstances making an award of attorney's fees unjust in this case. The trial court erred in denying Munsell's request for attorney's fees in connection with the motion to quash. We therefore reverse the denial of attorney's fees incurred as a result of the motion to quash and remand for a determination of the amount of attorney's fees to award to Munsell.

## II. Summary judgment on Munsell's claims

Munsell's complaint alleged multiple causes of action against both sets of defendants—Hambright and Counseling Associates, and Byler and Holy Cross Counseling Group. We will examine each in turn. When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999); *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.App.1999) (citing Ind. Trial Rule 56(C)); *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 7 (Ind.Ct.App.1998), *trans. denied* (quoting *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467 (Ind. Ct.App.1996), *trans. denied* (1997)). Our standard of review is not altered by cross motions for summary judgment on the same issues. *Indiana Ins. Co.*, 718 N.E.2d at 1152. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. *Id.* The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the nonmovant required to come forward with contrary evidence. *Id.* (citing *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 123 (Ind.1994)). This court may not search the entire record but may only consider the evidence that has been specifically designated. *Id.*; *Birrell*, 698 N.E.2d at 7 (quoting *Stevenson*, 672 N.E.2d at 471).

All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party.

*May,* 716 N.E.2d at 594. Even when facts are undisputed, summary judgment is not appropriate if those undisputed facts " 'give rise to conflicting inferences which would alter the outcome.' " *Id.* (quoting *Underwood v. City of Jasper Mun. Util. Serv. Bd.,* 678 N.E.2d 1280, 1282 (Ind.Ct. App.1997), *trans. denied* ). A fact is material if it is dispositive of the litigation. *Conwell v. Beatty,* 667 N.E.2d 768, 774 (Ind.Ct.App.1996).

A negligence action is generally not appropriate for disposal by summary judgment. *Miller v. Monsanto Co.,* 626 N.E.2d 538, 541 (Ind.Ct.App.1993). However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *U–Haul Int'l, Inc. v. The Mike Madrid Co.,* 734 N.E.2d 1048, 1052 (Ind.Ct.App.2000), *trans. denied* (2001).

### A. Medical malpractice negligence claims

Munsell raises multiple medical malpractice claims against both sets of defendants. In a medical malpractice action based upon negligence, the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Lusk v. Swanson,* 753 N.E.2d 748, 753 (Ind.Ct.App.2001). Munsell's complaint included several theories of negligence per se for breaching the statutory duty of mental health professionals to maintain confidentiality and, in the case of Byler, for falsely representing herself as a licensed therapist. Munsell and Amicus spend a considerable portion of their briefs arguing that Hambright and Byler breached their duty to maintain confidentiality

and thus committed negligence per se. We agree that a non-excused or non-justified violation of a duty prescribed by statute or ordinance is negligence per se. *McBride ex rel. Estate of McBride v. Cole Assocs., Inc.,* 753 N.E.2d 730, 739 (Ind.Ct. App.2001). However, a violation of a statutory duty is not actionable negligence unless it was also the proximate cause of the injury. *Id.* Thus, even if we assume that Hambright and Byler breached their statutory duties, the defendants are still entitled to summary judgment if there is no genuine issue of material fact with regard to whether the defendants' actions were a proximate cause of Munsell's damages, which included severe mental distress and anguish, lost wages, and loss of employment benefits.

A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. *Ashcraft v. Northeast Sullivan County School Corp.,* 706 N.E.2d 1101, 1105 (Ind. Ct.App.1999). Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct. *R.R. Donnelley & Sons Co. v. North Texas Steel Co., Inc.,* 752 N.E.2d 112, 140 (Ind.Ct.App.2001), *trans. denied* (2002). While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *City of Indianapolis Housing Auth. v. Pippin,* 726 N.E.2d 341, 347 (Ind.Ct.App.2000).

In support of their motions for summary judgment, the defendants submitted Northenor's affidavit, in which she stated that on October 1, 1999, after hearing rumors about Munsell's voyeurism, she confronted Munsell. Although he denied the rumors, Northenor did not believe him. She further states, "Nothing that any of

Mr. Munsell's counselors said to me caused me to recommend that Mr. Munsell resign.... We would have terminated Mr. Munsell's employment with Lake City Bank even if he had not gone to any counselors, and even if we had not talked to any of his counselors." *Appellant's Appendix* at 184–85. Munsell presents no evidence disputing Northenor's affidavit; instead, he points to the timing of the events and argues that they create an inference that the defendants' actions weighed in the Bank's decision. However, we find no such reasonable inference. There is no genuine issue of fact that the defendants' actions were not the proximate cause of Munsell's alleged damages related to the loss of his employment.

 Munsell also alleges that he suffered emotional damages as a result of the defendants' negligence. Historically, in order to maintain a cause of action for negligent infliction of emotional distress under Indiana law, a plaintiff must have satisfied the impact rule. *Alexander v. Scheid,* 726 N.E.2d 272, 283 (Ind.2000). The impact rule originally consisted of three elements: (1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress and precluded recovery for the case in which a plaintiff experienced real mental stress in the absence of a physical injury. *Id.* This rule has been relaxed in recent years. Now, where the direct impact test is not met, a plaintiff may still establish "direct involvement" by proving that he or she actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct. *Groves v. Taylor,* 729 N.E.2d 569, 573 (Ind.2000). This "modified impact rule"

maintains the requirement of a direct physical impact. *Conder v. Wood,* 716 N.E.2d 432, 434 (Ind.1999). However, the impact need not cause a physical injury to the plaintiff, and the plaintiff's emotional trauma need not result from a physical injury caused by the impact. *Id.*

Here, though, there was no impact of any kind either to Munsell or to a close relative. Thus, the present case is not the type of negligence action for which emotional damages are cognizable under Indiana law. Therefore, the defendants were entitled to summary judgment as to Munsell's claims for emotional damages resulting from their alleged negligence.

### B. Outrage

 Munsell's complaint also stated a claim against each of the defendants for outrage. To establish liability for the tort of outrage, also known as intentional infliction of emotional distress, a plaintiff must prove that a defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress. *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 691 (Ind.1997) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)); *Bradley v. Hall,* 720 N.E.2d 747, 752 (Ind.Ct.App.1999). It is the intent to harm one emotionally that forms the basis for the tort. *Bradley,* 720 N.E.2d at 752; *Mitchell v. Stevenson,* 677 N.E.2d 551, 563 (Ind.Ct.App.1997), *trans. denied.*

In *Watters v. Dinn,* 633 N.E.2d 280 (Ind.Ct.App.1994), *trans. denied,* the plaintiffs appealed from the entry of summary judgment in their claim which alleged, among other causes, a claim for intentional infliction of emotional distress. In that case, one of the plaintiffs and one of the defendants were former spouses engaged in a custody battle. The plaintiff-former wife remarried. In the course of the custody battle, the defendant-former husband issued subpoenas for, and obtained, the

confidential mental health records of the former wife's new husband from the defendant-health care provider and used the records in subsequent small claims litigation between the parties. *Id.* at 284–85.

We affirmed the grant of summary judgment as to the provider, noting that there was no evidence that it intended to harm the patient when it complied with what it reasonably believed to be a valid subpoena. However, considering the abundant evidence of animosity between the parties, we determined that a genuine issue of material fact remained as to whether the defendant-former husband intended to harm the plaintiffs. *Id.* at 292.

Here, the evidence shows that most of the communications between the defendants and Northenor were in response to employment-related issues, including an authorization for further counseling at the Bank's expense, Munsell's need for a leave of absence, and later, his desire and ability to return to work. These conversations were initiated at Munsell's express request. Hambright's conversation with Northenor in which he directed her to contact the police was prompted by Hambright's concern that Munsell was suicidal. There is no evidence that any of these conversations were motivated by an intent to harm Munsell or even with reckless disregard to the harm that could result. Rather, the defendants' conversations with Northenor were motivated by their efforts to obtain counseling for Munsell, to intercede on his behalf and at his request with his employer, and by their concern for Munsell's well-being at an apparent time of crisis. The defendants were entitled to summary judgment on Munsell's claims for outrage.

### C. Fraud

Munsell also alleged a claim for fraud against each of the defendants. Actual fraud exists when there is a material misrepresentation of a past or existing fact made with knowledge of or reckless disregard for the falsity of the statement to the detrimental reliance of a third party. *Short v. Haywood Printing Co., Inc.*, 667 N.E.2d 209, 213 (Ind.Ct.App.1996), *trans. denied* (1997). Detrimental reliance is the plaintiff's reasonable reliance on the defendant's misrepresentations. *Id.*

Although as we explained previously, compensatory damages for mental distress are generally recoverable only when the distress is accompanied by and results from a physical injury caused by an impact, we recognize an exception to this rule and award compensatory damages for mental anguish unaccompanied by physical injury in tort actions involving intentional conduct. *Mullen v. Cogdell*, 643 N.E.2d 390, 401–02 (Ind.Ct.App.1994), *trans. denied* (1995). The intentional conduct exception applies where the tort involves the invasion of a legal right that by its very nature is likely to provoke an emotional disturbance. *Id.* Proof of an intentional fraud will support an award of emotional distress damages. *Id.* Whether in a particular case the fraud is such that it is likely to provoke an emotional disturbance is a question of fact for the jury. *Id.*

As to Hambright and Counseling Associates, Munsell alleged that Hambright intentionally led him to believe that the purpose of the meeting was to provide Munsell counseling and that they therefore intended to maintain the confidentiality of any information disclosed. Munsell alleges that Hambright misrepresented the fact that he had no intention of providing Munsell with the protections of a typical patient-counselor relationship.

However, Hambright's affidavit explains that Hambright and Munsell met for an intake session on October 11, 1999, during which Munsell told Hambright about the

rumors of his voyeurism and admitted the truth of the rumors. He continues:

> "I requested that Mr. Munsell sign a release of information form so that I could talk to his employer to inform the employer that Mr. Munsell was in no condition to work, and would need a leave of absence.... I did not revealed [sic] any information unrelated to Mr. Munsell's ability to work. The only consequence I intended to my communication with Ms. Northenor was to enable Mr. Munsell to take two or three weeks off from work."

*Appellant's Appendix* at 199. This evidence negates Munsell's allegations that Hambright never intended to keep Munsell's confidences, and Munsell presents no evidence to the contrary. Hambright and Counseling Associates were entitled to summary judgment on Munsell's claim of fraud.

As to Byler and Holy Cross, Munsell alleged that Byler led him to believe that she wanted permission from him to speak to Northenor for the sole purpose of obtaining permission for his return to work, when in fact it was Byler's actual purpose to warn the Bank that Munsell was at risk to re-offend or engage in other deviant acts. However, Munsell points to no evidence or reasonable inference that Byler's conversations with Northenor were driven by that motivation. Byler's notes from her session with Munsell indicate that Munsell was emphatic that she contact Northenor about his return to work. In her answers to Munsell's interrogatories, Byler explains that she spoke with Northenor as Munsell requested and explained that Munsell could return to work if he had a support person available to him. The summary judgment evidence does not raise a genuine issue of material fact as to Byler's motivation for seeking permission to speak with the Bank regarding Munsell.

Byler and Counseling Associates were entitled to summary judgment on Munsell's fraud claim.

### D. Invasion of privacy

 Finally, although Munsell's complaint does not explicitly allege invasion of privacy, we note that the defendants also would have been entitled to summary judgment on this theory as well. The tort of invasion of privacy includes four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity, *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 966–67 (Ind.Ct.App. 2001), although there is some uncertainty with regard to whether all of the sub-torts are recognized under Indiana law. *See Doe*, 690 N.E.2d at 684 (plurality opinion). Nonetheless, we will examine the two subtorts that might arguably apply to this situation.

 Public disclosure of private facts occurs when a person gives "publicity" to a matter that concerns the "private life" of another, a matter that would be "highly offensive" to a reasonable person and that is not of legitimate public concern. *Dietz*, 754 N.E.2d at 966 (quoting *Doe*, 690 N.E.2d at 692). A communication to a single person or to a small group of persons is not actionable because the publicity element requires communication to the public at large or to so many persons that the matter is substantially certain to become one of public knowledge. *Id.* Here, all of the communications about which Munsell complains were made to one or two people. Release of information to even two co-workers does not satisfy the publicity requirement. *Id.* Thus, the defendants would have been entitled to summary judgment.

Even if we take the more expansive view of publicity endorsed by other courts, Munsell's claim still fails. The *Doe* court

noted that a few courts have adopted a looser definition of publicity, finding a disclosure actionable if made to a " 'particular public' with a special relationship to the plaintiff." *Doe,* 690 N.E.2d at 692 (quoting *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522, 531 (1977), *overruled in part by Bradley v. Saranac Cmty. Sch. Bd. of Educ.,* 455 Mich. 285, 565 N.W.2d 650 (1997)). In *Dietz,* we held that co-workers were not in such a special relationship. *Dietz,* 754 N.E.2d at 966–67.

 Here, we are not prepared to say that Munsell and Northenor had such a relationship. Furthermore, there is no liability when a defendant merely gives further publicity to information that is already public. *Doe,* 690 N.E.2d at 692. Northenor stated that she heard rumors about Munsell's voyeurism, and upon confronting him, became convinced that they were true. Further, Munsell contacted other Bank employees and exhibited irrational behavior. Thus, the information that the defendants disseminated regarding Munsell's diagnosis and his fragile emotional state was already known. Thus, even under this looser standard, the defendants are entitled to summary judgment.

Munsell's complaint might also have been construed as a claim for intrusion. To establish a claim for invasion of privacy by intrusion, a plaintiff must demonstrate that there was an intrusion upon his or her physical solitude or seclusion, as by invading his or her home or other quarters. *Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 524 (Ind.Ct. App.2001). The tort also arguably embraces intrusion into emotional solace. *Id.*

Obviously, no such intrusion into Munsell's physical space occurred here. Further, the telephone calls about which Munsell complains were not made to him, but to Northenor. Even if they had been to Munsell, we have previously held that a single telephone call, involving no threats or abusive language, cannot be the basis for invasion of privacy by intrusion. *Ledbetter v. Ross,* 725 N.E.2d 120, 123 (Ind.Ct. App.2000) (phone call revealing confidential mental health treatment information cannot form basis for intrusion). Here, also, although multiple telephone calls are at issue, the result is the same. The defendants made a series of non-threatening telephone calls over a period of a few weeks in the course of treating Munsell. We hold that these facts do not support a claim for intrusion into seclusion.

Affirmed in part, reversed in part, and remanded.

BROOK, C.J., and DARDEN, J., concur.