**Valerie L. HAMILTON, Appellant–Plaintiff,**

v.

**Steven D. ASHTON, D.O., Ashton Cosmetic Surgery, and Kosciusko Community Hospital, Appellees–Defendants.**

No. 43A03–0506–CV–300.

Court of Appeals of Indiana.

April 27, 2006.

Rehearing Granted July 12, 2006.

---

Karen B. Neiswinger, Indianapolis, for Appellant.

Michael H. Michmerhuizen, Tina M. Bell, Barrett & McNagny LLP, Fort Wayne, for Appellee Steven B. Ashton, D.O.

Robert J. Palmer, Jane F. Bennett, May Oberfell Lorber, Mishawaka, for Appellee Kosciusko Community Hospital.

**OPINION**

ROBB, Judge.

Valerie Hamilton appeals from the trial court's grant of summary judgment to Kosciusko Community Hospital (the "Hospital") and partial summary judgment to Steven B. Ashton, D.O. and Ashton Cosmetic Surgery (collectively referred to as "Dr. Ashton"). We affirm in part and reverse in part.

*Issues*

Hamilton raises two issues for our review:

1. Whether the trial court properly granted summary judgment to the Hospital; and

2. Whether the trial court properly granted partial summary judgment to Dr. Ashton.

*Facts and Procedural History*

According to our standard of review, we state the following facts in the light most favorable to Hamilton, the non-movant. Prior to August 1999, Hamilton had mild-to-moderate hearing loss in her left ear. In August 1999, she underwent surgery to place a prosthesis in her left ear, replacing the bones of her middle ear that were not functioning normally. After that surgery, Hamilton began experiencing drainage from her left ear, her eardrum became perforated, and the prosthesis was partially extruded. Dr. Ashton recommended surgery to replace the prosthesis and repair the eardrum.

The surgery was scheduled for August 25, 2000, at the Hospital. A few days before the scheduled surgery, Hamilton suffered an ear infection for which Dr. Ashton prescribed the antibiotic Augmentin. Hamilton questioned whether the surgery should be performed with only two days' worth of antibiotics, but Dr. Ashton expressed no concerns and led Hamilton to believe there was a sense of urgency to have the surgery done promptly. Prior to the surgery, the anesthesiologist explained the risks of anesthesia and Dr. Ashton explained the risks of the surgery to Hamilton, and she signed a consent form. She does not recall either doctor or the consent form mentioning the possibility of a facial nerve injury as one of the risks of the surgery. Hamilton claimed in her affidavit designated in opposition to summary judgment that had she known about the risk of facial nerve injury inherent in the procedure Dr. Ashton performed, she "never would have allowed Dr. Ashton to perform surgery to replace the prosthesis, and would have opted instead just for removal of the old prosthesis and placing a patch over the hole in [her] eardrum." Appendix of Appellant at 93. Removal of the prosthesis without also replacing it would not have involved the same risk of a facial nerve injury as the procedure Hamilton underwent.

Following the surgery, Hamilton was unable to move the left side of her face and questioned a nurse about it. The nurse told her that the paralysis was a side-effect from a local anesthetic and it would wear off. Hamilton's mother, Sue Kenoshmeg, was with her throughout the day of her surgery and states in her affidavit that Dr. Ashton never came to Hamilton's room following the surgery to check on her. The Hospital released Hamilton within hours of her surgery, despite the fact that Hamilton's face remained paralyzed and she was dizzy, weak, and nauseous.

The day after the surgery, a Saturday, Hamilton's face remained paralyzed, and her left eye started rolling back in her head. Mrs. Kenoshmeg was unable to contact Dr. Ashton about this development because his office was closed on weekends and he had not given her a contact number. She instead contacted the Hospital, and was advised to buy an over-the-counter eye ointment to keep the eye moist and to have Hamilton wear an eye patch. On Monday, Mrs. Kenoshmeg contacted Dr. Ashton's office and scheduled an appointment for Hamilton for the following day. At that appointment, Dr. Ashton told Hamilton he had not been near her facial nerve during the surgery, that the paralysis was likely a result of swelling pushing on the nerve, and that it should resolve within two months.

Although Dr. Ashton had assured Hamilton prior to the surgery that she would be able to return to school on the Monday following the surgery, she was not able to return for two weeks. The paralysis did not resolve within two weeks, and although it did improve somewhat over time, she still suffers from a degree of paralysis and cannot completely shut her left eye at times. Her smile is crooked and her speech impaired. She continues to suffer from recurrent ear infections and the hearing in her left ear is worse than before the surgery. Further improvement is not likely.

On March 6, 2002, Hamilton filed a proposed complaint against Dr. Ashton with the Indiana Department of Insurance.[1] On May 29, 2002, she filed the complaint in Kosciusko Superior Court.[2] On May 17, 2004, the medical review panel issued the following opinion concerning Hamilton's claim against Dr. Ashton:

As to the complaint that [Dr. Ashton] failed to obtain the patient's informed consent to the procedure involved, there is a material question of fact, not requiring expert opinion, for resolution by the court or jury.

The evidence does not support the conclusion that [Dr. Ashton] failed to comply with the applicable standard of care in the performance of the surgery as charged in the Proposed Complaint.

There is a material question of fact, not requiring expert opinion, for resolution by the court or jury with regard to the post-operative care provided by [Dr. Ashton] on the issue of the onset of the patient's facial paralysis, inasmuch as if the onset were immediately following the surgery, the evidence supports the conclusion that [Dr. Ashton] failed to comply with the applicable standard of care, but if the onset were delayed, the

1. The Hospital is not a "qualified provider" subject to the provisions of the Medical Malpractice Act. See Ind.Code § 34–18–2–24.5.

2. Because the Hospital was not subject to the Medical Malpractice Act, Hamilton was required to file a complaint at least against the

Hospital while the review panel had the case against Dr. Ashton in order to preserve the statute of limitations. Dr. Ashton was named in the complaint, but the case as to him was on hold until after the review panel issued its opinion. See Ind.Code § 34–18–8–7.

evidence does not support the conclusion that [Dr. Ashton] failed to comply with the applicable standard of care.

App. of Appellant at 20–21. Following the review panel's opinion, the Hospital filed a motion for summary judgment, alleging in pertinent part:

2. [Hamilton] alleges that on or about August 25, 2000, [the Hospital] failed to comply with the applicable standard of care, resulting in injuries, losses and damages to [Hamilton].

3. The designated evidence establishes that there is no genuine issue of material fact and that no act or omission of [the Hospital] was a proximate cause of [Hamilton's] alleged injuries.

4. Specifically, the evidence establishes that even if [the Hospital] acted as [Hamilton] alleges it should have acted, it would have made no difference in that [Hamilton's] treating physician would not have taken any different actions.

*Id.* at 30. The trial court granted the Hospital's motion.

Dr. Ashton also filed a motion for partial summary judgment, alleging in pertinent part:

... there exists no genuine issue of material fact as to the applicable standard of care in the performance of the surgery as charged in the Proposed Complaint and that [Dr. Ashton] is entitled to the entry of partial summary judgment as a matter of law. The [Review] Panel did go on to find a material issue of fact as to the post-operative care provided by [Dr. Ashton]. However, this Motion for Summary Judgment is limited only to the performance of the

surgery which will limit the issues at trial to the post-operative care.

*Id.* at 65. The trial court granted this motion, finding:

... there is no genuine issue of material fact as to whether Dr. Ashton met the applicable standard of care with regard to his performance of the procedure in question. The summary judgment does not pertain to the issue of informed consent or the post-operative care. Instead, this grant of Summary Judgment shall apply specifically to the surgical techniques used during the procedure.

*Id.* at 16. Hamilton now appeals the trial court's grant of summary judgment to the Hospital and partial summary judgment to Dr. Ashton.[3] Additional facts will be provided as necessary.

*Discussion and Decision*

### I. Summary Judgment Standard of Review

Our standard of review for a ruling on summary judgment is well-settled: summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C).

Upon appeal, we are bound by the same standard as the trial court. We consider only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact.

---

3. Because the entry of summary judgment for the Hospital disposed of all claims against the Hospital, that order was a final order and Hamilton initiated an appeal by merely filing a Notice of Appeal. However, the grant of partial summary judgment for Dr. Ashton was an interlocutory order. Hamilton thus properly sought certification of the order for interlocutory appeal and this court accepted jurisdiction and consolidated the two appeals.

*St. Joseph County Police Dept. v. Shumaker*, 812 N.E.2d 1143, 1145 (Ind.Ct.App. 2004), *trans. denied.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 115 (Ind.Ct.App.2003). A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 514 (Ind.Ct.App.2005). If the trial court's ruling can be sustained on any theory or basis supported by the record, we must affirm. *Id.*

## II. The Hospital

█ We address first the trial court's grant of summary judgment to the Hospital. As stated above, Hamilton claims that when she awoke from the surgery, she immediately noticed she was unable to move the left side of her face. She questioned a nurse about the paralysis and was told it would go away. The nurse left the room, and Hamilton's mother had the impression she went to call Dr. Ashton. The nurse returned and gave Hamilton a shot. According to Hamilton and her mother, Dr. Ashton did not check on her following the surgery and in fact, she did not see Dr. Ashton again until four days later in his office. Hamilton's mother averred that she contacted the Hospital the day after the surgery because the paralysis was not better and Hamilton's eye was rolling back in her head. She was told to get eye ointment and an eye patch. Hamilton's mother assumed that the staff had paged Dr. Ashton to advise him of the situation and that he had suggested the ointment and eye patch. Neither Hamilton's query immediately following surgery nor Hamil-

ton's mother's call the following day is documented in the hospital record. Dr. Ashton was never made aware of the call concerning Hamilton's eye.

Dr. Ashton states in his affidavit that he checked on Hamilton twice in the hours immediately following the surgery and before her discharge from the Hospital and noted no signs of facial palsy. Upon seeing Hamilton on August 29, 2000, and being informed for the first time by her that she experienced facial palsy while still in the Hospital, Dr. Ashton contacted the Hospital and the nursing staff denied that she exhibited any signs of facial palsy prior to discharge. Additionally, Dr. Ashton states:

> If I had received a report from [the Hospital] that [Hamilton] had facial paralysis and her eye was rolling back into her head within a day after her August 25, 2000 surgery, the course of treatment would not have changed. I would have seen her, discussed the situation with her, and explained to her why I thought she had the paralysis, however, I would not have provided any therapy at that time. [Hamilton] was not a candidate for additional surgery at that time, and I would have wanted to see if she showed signs of improvement before starting steroids.

App. of Appellant at 64. However, in his deposition, Dr. Ashton was asked about what treatment would be indicated if a reasonable prudent surgeon received a report from hospital staff that within twenty-four hours of surgery, a patient was complaining of facial paralysis. Dr. Ashton replied:

> If I, if I would have known about that within twenty-four hours, I would have seen her, we would of [sic] discussed the situation and why I thought that had happened. As far as therapy from that standpoint, I probably wouldn't have

done much at that point. I would have expected this to resolve.... But as far as, uhm, at that point, uhm *we may have put her on some steroids* to try to help decrease some of the swelling and the inflammation that I knew was there which was probably causing the pressure in the facial nerve paralysis.

Appellant's App. at 43 (emphasis added). Dr. Ashton also stated at his deposition that if the Hospital received a report that a patient's face was paralyzed and her eye rolling back in her head following surgery, it should have notified him, and should not have advised purchase of eye drops and an eye patch.

In response to the Hospital's motion for summary judgment, Hamilton designated the affidavit of Dr. Lawrence Lustig. Dr. Lustig reviewed the medical records associated with Hamilton's case, as well as relevant affidavits. He states that there are no notes in the Hospital record mentioning Hamilton's complaint about facial paralysis immediately following the surgery or indicating any response thereto.

It is my opinion that the standard of care required the following: that the nursing staff should have documented [Hamilton's] statements about her inability to move the left half of her face, that they should have assessed whether the left half of her face was paralyzed, and such concerns should have been immediately reported to Dr. Ashton. The standard of care also required that the nursing staff should have made follow-up assessments of the left half of [Hamilton's] face, these assessments should have been reported to Dr. Ashton, and they should have documented their findings and reports to Dr. Ashton in the medical record.

App. of Appellant at 102. As for the call the day following surgery concerning Hamilton's continued facial paralysis and her eye, Dr. Lustig states:

It is my opinion that it was below the applicable standard of care for the nursing staff to fail to document the concerns stated by [Hamilton's] mother, and to fail to immediately report [Hamilton's] complaints to Dr. Ashton. If he was unable or unwilling to immediately respond, it is my opinion that [the Hospital] should have referred the patient to another qualified physician, or to an emergency department to be assessed and treated immediately.

*Id.* at 104. As for Dr. Ashton, Dr. Lustig opines in part that the standard of care required Dr. Ashton to prescribe steroid medications immediately to reduce inflammation and to perform exploratory surgery within a few days if the steroids did not result in improvement. He also opines that it was below the standard of care for Dr. Ashton to fail to provide a means of communication over a weekend and to rely on the Hospital's staff to receive reports from his surgical patients and provide advice. Dr. Lustig concludes that "the combined negligence of [the Hospital] and Dr. Ashton resulted in [Hamilton] losing a chance for full recovery of her facial nerve and/or a better outcome." *Id.*

 The Hospital focuses upon Dr. Ashton's statement that regardless of what the Hospital did, his course of action would not have changed, and claims that Hamilton cannot therefore prove that any negligence by the Hospital was a proximate cause of her injury. In a medical malpractice action based upon negligence, the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Munsell v. Hambright,*

776 N.E.2d 1272, 1279 (Ind.Ct.App.2002), *trans. denied.* A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. *Id.* Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct. *Id.* While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Id.* The defendant's act need not be the sole cause of the plaintiff's injuries. *Smith v. Beaty,* 639 N.E.2d 1029, 1034 (Ind.Ct.App.1994). Many causes may produce the injurious result; the essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause. *Id.*

We agree with Hamilton that the trial court improperly granted summary judgment to the Hospital. Construing the evidence in favor of Hamilton, we must assume that she had facial paralysis immediately after the surgery, that she reported this to the nursing staff of the Hospital, and that the nursing staff failed to document Hamilton's complaints or notify Dr. Ashton thereof. Moreover, we must assume that Dr. Ashton did not see Hamilton post-operatively and did not observe her condition for himself. Hamilton's mother called the Hospital the next day because Hamilton's face was still paralyzed and her eye had begun to roll back in her head. The nursing staff did not document this call nor did it notify Dr. Ashton and seek a recommendation from him. Rather, the Hospital recommended ointment and an eye patch without a doctor's advice. Dr. Ashton's testimony regarding what he would have done had he been notified of the facial paralysis prior to seeing Hamilton in his office four days after the operation is

conflicting. He states in his affidavit that the course of treatment would not have changed, but testified at his deposition that he "may" have started Hamilton on steroids sooner. Hamilton's expert opines that steroids should have been administered immediately. Both Dr. Ashton and Hamilton's expert state that the standard of care required the Hospital staff to notify Dr. Ashton of Hamilton's complaints and not to recommend ointment and an eye patch on its own. Had the Hospital done what the standard of care required, it is possible that Dr. Ashton would have begun treatment sooner or that Hamilton would have sought treatment elsewhere and the outcome for Hamilton could have been different. Accordingly, Hamilton has demonstrated that there is at least a question of fact as to whether the Hospital's negligence was a proximate cause of her injuries and summary judgment was improperly granted.

### III. Dr. Ashton

■ Hamilton also contends that the trial court improperly granted partial summary judgment for Dr. Ashton. The trial court granted summary judgment to Dr. Ashton on the issue of "his performance of the procedure in question." Appellant's App. at 16. Informed consent and post-operative care were specifically excluded from the summary judgment and the grant of summary judgment was limited to "the surgical techniques used during the procedure." *Id.* Hamilton averred in her affidavit that Dr. Ashton did not inform her that injury to her facial nerve was a risk of the procedure Dr. Ashton performed. She states that "[i]f I had known that there was any substantial risk of facial nerve injury, I never would have allowed Dr. Ashton to perform surgery to replace the prosthesis, and would have opted instead just for removal of the old prosthesis and

placing a patch over the hole in my eardrum." *Id.* at 93. She contends that ruling as a matter of law that Dr. Ashton "did not breach the standard of care in performing the surgery logically and legally presupposes there was proper informed consent, since proper informed consent is a fundamental prerequisite for performing a surgery that complied with the standard of care." Reply Brief of Appellant at 7.

The issues of informed consent and negligence in surgical performance, though often intertwined, are two independent issues. No Indiana case seems to have addressed this directly. The closest case our research has uncovered is *GYN–OB Consultants, L.L.C. v. Schopp*, 780 N.E.2d 1206 (Ind.Ct.App.2003), *trans. denied.* In that case, the patient alleged her doctor performed unauthorized and improper surgery when he removed skin tags at the same time he performed a hysterectomy. The medical review panel found that the doctor was not negligent and performed within the applicable standard of care, but also found that an issue of fact remained as to whether the patient had given the doctor consent to remove the skin tags. The patient initiated a lawsuit alleging the doctor had performed unauthorized, unnecessary, and careless surgery. The trial court denied the doctor's motion for summary judgment on the issue of whether the battery claim was barred by the statute of limitations, but granted partial summary judgment to the doctor on the issue of whether he was negligent in the manner of performing the surgery. The doctor appealed the denial of summary judgment on the battery claim, and the patient cross-appealed the grant of partial summary judgment. We held that the trial court erred in denying summary judgment on the statute of limitations, and although the issue could also be disposed of on statute of limitations grounds, agreed with the trial court that

the patient had failed to designate any evidence to rebut the medical review panel's determination that the doctor acted within the requisite standard of care in performing the surgery. *Id.* at 1212. Thus, although not directly on point, *Schopp* supports the idea of considering an informed consent claim independently of the performance of the procedure in question.

 Under the doctrine of informed consent, a doctor must disclose the facts and risks of a treatment which a reasonably prudent physician would be expected to disclose under like circumstances and which a reasonable person would want to know. *Weinberg v. Bess,* 717 N.E.2d 584, 588 n. 5 (Ind.1999). This is separate and apart from the doctor's duty to "exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Vergara by Vergara v. Doan,* 593 N.E.2d 185, 187 (Ind.1992). It is possible for a doctor to perform a surgery for which there was no informed consent in a medically appropriate way such that the patient has only a cause of action for the failure to receive informed consent and not also for medical malpractice in the performance of the procedure. *See Montgomery v. Bazaz–Sehgal,* 568 Pa. 574, 798 A.2d 742, 749 (2002) (acknowledging that a claim for lack of consent to a surgery can be maintained even where there is no allegation of negligence in the actual performance of the procedure: "While negligence claims and informed consent claims often co-exist in the same tort action, they need not do so. A lack of informed consent ... claim is actionable even if the subject surgery was properly performed and the overall result is beneficial.").

Such is the case here. The medical review panel opined that Dr. Ashton met the applicable standard of care in performing the surgery. When a medical review panel renders an opinion in favor of the physician, the plaintiff must then come forward with expert medical testimony to rebut the panel's opinion in order to withstand summary judgment. *Bunch v. Tiwari*, 711 N.E.2d 844, 850 (Ind.Ct.App. 1999). Hamilton's designated evidence concerns only her informed consent to the procedure, not Dr. Ashton's actual performance of it. Hamilton's expert states that

It is my opinion that any reasonably-prudent ear surgeon would know that there was a risk of facial nerve injury associated with the proposed August, 2000 surgery to replace the prosthesis, and that the applicable standard of care required Dr. Ashton to advise [Hamilton] of this risk and obtain her consent to accept this risk before performing the surgery. His failure to advise her of this risk and obtain her consent to accept this risk before performing the revision surgery would be below the applicable standard of care.

Appellant's App. at 101. The expert never addresses the issue of the surgery itself. Hamilton has designated no evidence to suggest that Dr. Ashton negligently performed the surgery in question, and the trial court therefore appropriately granted partial summary judgment to Dr. Ashton on this limited issue. Hamilton's claim of lack of informed consent, recognized by both the medical review panel and the trial court to be a separate issue, remains.

### Conclusion

The trial court improperly granted summary judgment to the Hospital, as Hamilton's designated evidence raises at least a question of fact regarding whether the Hospital's alleged negligence was a proximate cause of her injuries. The trial court properly granted partial summary judgment to Dr. Ashton on the issue of his performance of the actual surgical procedure in question. Hamilton's claims regarding informed consent and Dr. Ashton's post-operative care remain. Accordingly, the judgment of the trial court as to the Hospital is reversed; the judgment as to Dr. Ashton is affirmed.

Affirmed in part, reversed in part.

VAIDIK, J., and MATHIAS, J., concur.