**James LEDDEN, Appellant–Defendant,**

v.

**Laraye KUZMA and Zacharey Kuzma, by his next friend Laraye Kuzma, Appellees–Plaintiffs.**

**No. 45A04–0604CV–192.**

Court of Appeals of Indiana.

Dec. 12, 2006.

Robert F. Parker, Chad J. Melchi, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorneys for Appellant.

Timothy F. Kelly, Michael P. Massucci, Kelly Law Offices, Crown Point, IN, Attorneys for Appellees.

Kevin C. Schiferl, Todd A. Croftchik, Jared A. Harts, Locke Reynolds LLP, Indianapolis, IN, James D. Johnson, Rudolph Fine Porter Johnson, LLP, Evansville, IN, Attorneys for Amicus Curiae Defense Trial Counsel of Indiana.

BAKER, Judge.

Appellant-defendant James Ledden brings this interlocutory appeal from the trial court's order requiring him to pay the attorney fees and costs of appellees-defendants Laraye and Zacharey Kuzma in the

amount of $1,170. The Kuzmas sought a protective order barring Ledden's expert from attending Ledden's deposition of the Kuzmas' expert witness. The trial court granted the Kuzmas' request for a protective order and subsequently ordered Ledden to pay the Kuzmas' attorney fees and costs stemming from the protective order dispute. Finding that Ledden's opposition to the motion for protective order was substantially justified, we reverse the judgment of the trial court and remand for the continuation of the underlying litigation.

### FACTS

On July 12, 2003, a residence in Whiting that was owned by Ledden and leased to Laraye was damaged by fire. The Kuzmas were both injured as a result of the fire. On February 27, 2004, the Kuzmas filed a complaint against Ledden, alleging, among other things, that he had violated housing safety codes, statutes, and ordinances, was otherwise negligent in failing to provide appropriate means of egress from the residence, and had breached the warranties of habitability and fitness for a particular purpose.

During the course of discovery, the Kuzmas retained Daniel C. Gottuk as an expert in the field of fire modeling.[1] On December 7, 2005, Dr. Gottuk issued a lengthy and technical report containing references to seven technical publications, five tables of data, and five figures depicting various aspects of Dr. Gottuk's modeling. Ledden scheduled Dr. Gottuk's deposition for January 10, 2005. On that date, Ledden's attorney was accompanied to the deposition by Douglas J. Carpenter, a consulting expert in fire modeling. Ledden

had not notified the Kuzmas ahead of time that he planned to bring an expert to the deposition. When the Kuzmas' attorney realized that Carpenter was present, he refused to allow the deposition to proceed if Carpenter was in the room. The parties attempted unsuccessfully to contact the trial court in hopes of resolving the dispute at that time. The Kuzmas' attorney offered to (1) permit the deposition to proceed with Carpenter outside the deposition room but available for consultation with Ledden's counsel, and (2) permit Ledden's attorney to take as many breaks in the deposition as might have been necessary for such consultations. Ledden's attorney rejected the alternative and adjourned the deposition with no testimony being taken.

On January 13, 2006, the Kuzmas filed a motion for protective order and for reimbursement of costs, and on January 19, 2006, Ledden filed a cross-motion to compel deposition and to recover expenses. On February 16, 2006, the trial court heard argument on both motions, and on February 21, 2006, the trial court granted the Kuzmas' motion and denied Ledden's cross-motion. Among other things, the trial court ordered as follows:

> [Ledden's] counsel shall not be allowed to bring an expert or consultant into a deposition to assist him; the expert or consultant may remain outside the deposition room during the deposition for purposes of consultation. [Ledden] is hereby ordered to pay [the Kuzmas'] attorney fees and litigation expenses incurred in connection with this issue in the amount of $1,170....

Appellant's App. p. 7.

On April 21, 2006, the trial court certified the February 21 order for interlocu-

---

1. Fire modeling is an area of science that attempts "to describe the behavior of a fire through mathematical computer simulation of the fire after input of multiple variables, such as compartment dimensions, amount and nature of fuels, environmental conditions, [and] ignition sources...." Appellant's Br. p. 4 n. 1.

tory appeal. On April 24, 2006, Ledden filed a notice of appeal as of right regarding the portion of the trial court's order directing him to pay the Kuzmas' attorney fees and costs. On the same date, he filed a motion for acceptance of discretionary interlocutory appeal regarding the portion of the trial court's order barring Ledden from bringing an expert into a deposition. On May 26, 2006, this court denied Ledden's motion. Consequently, the only issue in this appeal is whether the trial court properly ordered Ledden to pay the Kuzmas' attorney fees and costs stemming from their motion for protective order.

## DISCUSSION AND DECISION

### I. Fee Awards Pursuant to Trial Rule 37(A)(4)

 When a trial court enters or denies a protective order, a presumption arises that the trial court will also order reimbursement of the prevailing party's reasonable expenses. *Munsell v. Hambright*, 776 N.E.2d 1272, 1277 (Ind.Ct.App. 2002). This award of fees is mandatory, subject only to a showing that the losing party's conduct was substantially justified or that other circumstances make an award of expenses unjust. *Id.* A person is "substantially justified" in seeking to compel or in resisting discovery, for purposes of avoiding the sanctions provided by Trial Rule 37(A)(4), if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with or entitled to resist the requested discovery. *Id.*

The Kuzmas sought the protective order pursuant to Trial Rule 26(C), which provides that the provisions of Trial Rule 37(A)(4) govern the award of expenses incurred with respect to a motion for a protective order. Trial Rule 37(A)(4), in turn, provides in relevant part as follows:

(A) Motion for order compelling discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

\* \* \*

(4) Award of expenses of motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, *unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. . . .*

(Emphasis added). We have had occasion in the past to consider the meaning of "substantially justified" as it is used in the rule:

On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists.

*Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 512 (Ind.Ct.App.1999). The United States Supreme Court has explained that "substantially justified" "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' ... or 'if reasonable people could differ as to [the appropriateness of the contested ac-

tion]. . . .' " *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted); *see also* Fed. R.Civ.P. 37(a)(4) (essentially identical to Indiana Trial Rule 37(A)(4)); Penn Cent., 712 N.E.2d at 513 (holding that federal decisions "provide sound guidance for defining the phrase 'substantially justified' as used within the Indiana Trial Rules").

## II. Protective Order

■ To determine whether Ledden was substantially justified in contesting the Kuzmas' motion for protective order, we must determine whether, in fact, the Kuzmas were entitled to the protective order. In pertinent part, Indiana Trial Rule 26(C) provides as follows:

(C) Protective Orders. Upon motion by any party or by the person from whom discovery is sought, *and for good cause shown,* the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires *to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,* including one or more of the following:

* * *

(5) that discovery be conducted with no one present except the parties and their attorneys and persons designated by the court. . . .

(Emphases added); *see also* Fed.R.Civ.P. 26(c)(5) (essentially identical to Indiana Trial Rule 26(C)(5)); *Stuff v. Simmons,* 838 N.E.2d 1096, 1100 (Ind.Ct.App.2005) (holding that federal analysis of Federal Rules of Civil Procedure is helpful in analyzing Indiana Trial Rules where language of rules is virtually identical), *trans. denied.*[2] Federal courts have explained the "good cause" standard under Federal Rule of Civil Procedure 26(C) as follows:

The "good cause" standard for granting a protective order therefore applies to consideration of the exclusion of witnesses from depositions, and the party seeking the protective order bears the burden of showing good cause. *See Jones v. Circle K Stores, Inc.,* 185 F.R.D. 223, 224 (M.D.N.C.1999). This "contemplates a *particular and specific demonstration of fact* as distinguished from stereotyped and conclusory statements." *Id.,* quoting *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir.1998) quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978). Issuance of a protective order without "a particular and specific demonstration of fact" constitutes an abuse of discretion. *In re Terra Int'l,* 134 F.3d at 306. Rule 26(c)(5) "and the Court's discretion under it, should be invoked sparingly, else the openness on which our legal system properly prides itself would be impaired." *Kerschbaumer v. Bell,* 112 F.R.D. 426 (D.D.C.1986).

*Bell ex rel. Estate of Bell v. Bd. of Educ.,* 225 F.R.D. 186, 196 (S.D.W.Va.2004) (emphasis in original).

---

**2.** The parties disagree about whether we may properly apply Indiana Evidence Rule 615, and, consequently, caselaw interpreting Federal Rule of Evidence 615, to the situation herein. Indiana Evidence Rule 615 provides, subject to certain exceptions, that "[a]t the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion." We will accept the Kuzmas' position for argument's sake—without deciding the issue—and decline to apply Rule 615 herein, inasmuch as we conclude below that even if we limit our analysis to Trial Rule 26(C), the Kuzmas failed to meet their burden such that a protective order was warranted.

We find *In re Terra International, Inc.,* to be instructive. 134 F.3d 302 (5th Cir. 1998). In Terra, a party to the lawsuit sought a protective order barring, among other things, all fact witnesses from attending the depositions of other fact witnesses. The motion was not supported by affidavits or other evidence, merely alleging that the employees of the opposing party might feel "a sense of camaraderie" or feel pressure from their employer that might taint their testimony and preclude counsel from obtaining the witness's "raw reactions." *Id.* at 305. The movant contended that these factors constituted the "good cause" necessary to justify a protective order pursuant to Federal Rule of Civil Procedure 26(c)(5). The trial court agreed and granted the motion for protective order, and on appeal, the Fifth Circuit analyzed the "good cause" requirement of Rule 26(c)(5), concluding as follows:

> In this case, [the movant] made nothing more than a conclusory allegation that a substantial majority of the fact witnesses in the underlying litigation are employees of [the nonmovant] and that they will therefore be subject to [the nonmovant's] influence and will be inclined to protect each other through a sense of "camaraderie." [The movant] did not support its motion for protective order with any affidavits or other evidence that might provide support for this simple assertion. The district court's entry of the protective order ... was therefore unsupported by a "particular and specific demonstration of fact" and therefore constituted a clear abuse of discretion.... To conclude otherwise would indicate that good cause exists for granting a protective order any time fact witnesses in a case are employed by the same employer or are employed by a party in the case. Such a conclusion is inconsistent with this court's admonition that a district court may not grant a

protective order solely on the basis of "stereotyped and conclusory statements."

*Id.* at 306 (citations omitted).

Here, similarly, the Kuzmas' only support for the requested protective order is a series of conclusory allegations:

- "The deposition notice did not give any indication that defense counsel would have an expert with him, nor did defense counsel ever notify plaintiffs of his intent to have his expert attend the deposition." Appellant's App. p. 12.
- "[Ledden] is attempting to gain an unfair and prejudicial advantage by having an expert with him at the deposition to assist him in asking questions of the [Kuzmas'] expert. The [Kuzmas] will suffer prejudice if this Court does not grant this protective order." *Id.* at 13.
- "The Kuzmas did not want their witness to feel intimidated by [Ledden's] expert's presence." Appellee's Br. p. 11.
- "[Ledden] wants his expert present to intimidate the Kuzmas' witness. Even if [Ledden] states this is not the reason, it is certainly not an undesirable byproduct of having his expert physically present.... To allow [Ledden's] expert to physically attend the deposition of another party's witness gives [Ledden] an unfair advantage." *Id.* at 23.

Neither the motion nor the conclusory statements contained therein are supported by affidavits or other evidence. To the contrary, this argument is clearly unsupported by a particular and specific demonstration of fact. As in *Terra,* to conclude otherwise would indicate that good cause exists for granting a protective order anytime a party conducting a deposition sought to bring an expert to assist the

attorney with the deposition. Such a conclusion is inconsistent with the explicit prohibition on granting a protective order solely on the basis of stereotyped and conclusory statements.[3]

■■■ Under appropriate circumstances, it may be proper for a protective order to be granted barring an expert—or anyone else—from attending the deposition in question. If a party is able to meet the requirements of Trial Rule 26(c)(5), then a protective order would be warranted. But if, as here, a party is unable to provide any particular and specific demonstration of fact in support of the request for a protective order, then there is no reason—based in logic or rule—to bar the expert from attending the deposition.[4]

If the trial court's ruling on the Kuzmas' motion for protective order were properly before us on this appeal, therefore, we would find that the trial court abused its discretion in granting that motion and order it to vacate the protective order. Short of that, it is apparent that Ledden was substantially justified in opposing the Kuzmas' motion. Consequently, we conclude that the trial court erred in requiring Ledden to pay for the Kuzmas' attorney fees and costs incurred in litigating the motion for protective order.[5]

The judgment of the trial court is reversed and remanded for the continuation of the underlying litigation.

ROBB, J., and BARNES, J., concur.

3. The Kuzmas insist that they suggested a feasible alternative whereby Ledden's expert would remain outside the room in which the deposition was taking place but Ledden's attorney would be free to stop and start the deposition as often as needed to confer with his expert. Initially, we observe that Ledden was under no obligation to accept that suggestion, inasmuch as it was the Kuzmas' burden to establish the requirements for a protective order. Furthermore, that alternative is virtually unworkable because requiring Ledden's attorney to leave the deposition room on what would likely be a question-by-question basis involves inherent communication difficulties and substantially increases the length of the deposition, causing the cost to increase for all parties.

4. Additionally, we observe that although the trial court based its order, in part, on the fact that Ledden had provided no notice to the Kuzmas that his expert would be attending the deposition, there is no requirement that a party provide such notice. Ind. Trial Rule 30(B)(1); but cf. Tex.R. Civ. P. 200(a)(2) (explicitly requiring that a deposition notice provide reasonable notice to all parties of the identity of people who will attend the deposition other than the witness, parties, spouses of parties, counsel, employees of counsel, and the officer taking the deposition).

5. Ledden also asks, as an aside, that we find that the Kuzmas were not substantially justified in seeking the protective order or in contesting his cross-motion to compel Dr. Gottuk's deposition and order that the Kuzmas should pay his attorney fees and costs. But because this is an issue of first impression in this State, we decline to find that the Kuzmas were not substantially justified in seeking its resolution.